# THE STATE v. BENJAMIN ATCHLEY, Appellant.

### In Banc, February 2, 1905.

1. **CHANGE OF VENUE: Finding of Trial Court.** In order for an appellate court to reverse the action of the trial court in denying to a defendant a change of venue on account of the prejudice of the inhabitants of the county, it must be satisfied that the finding of the judge was clearly against the evidence.

2. **PEACE WARRANT: Evidence.** An offer by defendant to prove that a short time prior to the homicide he went to a justice of the peace and asked to have deceased put under bond to keep the peace. the deceased being not summoned and not present when the request was made, is not competent evidence. It was proof only of defendant's own self-serving declarations.

3. **INSTRUCTION: Admitted Non-Essential Fact.** It is unnecessary to instruct that a certain fact existed,· which no one denied and which in no way by itself occasioned the homicide. Where it was admitted by all the evidence that defendant's wife, to ·whose charge of stealing grain and embezzling money from the mill deceased objected, owned an interest in the mill, it was unnecessary to tell the jury that fact and that, by reason thereof, she had a right to be in and around the mill which was being operated by deceased and defendant as partners. And a judgment will not be reversed because of the refusal of an instruction so declaring.

4. ————: **Correct List: Defense of Wife.** The instructions set out in the statement fully defined the right of defendant to defend himself and his wife against the assaults and insults of the deceased, and are on all other points full and correct declarations of law in a homicide trial.

5. **DEFENDANT'S WIFE: Cross-Examination: No Objection.** Objections to the cross-examination of defendant's wife, made for the first time in the appellate court, are not reviewable.

6. **HOMICIDE: Verdict: Result of Passion and Prejudice.** Disinterested witnesses, not over twenty-five feet from the place of the homicide, testified that the deceased was struck with a heavy club while he was on his knees busily engaged in adjusting the wheel which regulated the mill, and defendant and his wife testified that, just prior to the assault upon deceased by defendant, deceased struck defendant's wife and called her a

dirty bitch, and was in the act of pursuing her down the steps into the engine room where defendant was when defendant came up and stepped between her and deceased and to prevent him from doing further harm struck the deceased with a club. *Held,* that the jury were alone competent to pass upon this conflict of testimony, and their verdict of murder in the second degree does not indicate passion or prejudice.

7. ——: **Insults to Wife.** The application of an insulting epithet to defendant's wife, if not accompanied by any blow or assault upon her, is not sufficient provocation to reduce homicide to manslaughter.

8. **INFORMATION: No Oath.** Where the prosecuting attorney nowhere in the information charging murder says that the charge is made "upon his oath" or "upon his official oath," the information is bad, and a judgment of conviction cannot stand, even though no objection was raised thereto in the trial court or by defendant's attorneys in this court.

Appeal from Dallas Circuit Court.—*Hon. Jas. T. Neville,* Judge.

REVERSED AND REMANDED.

*Mayfield, Moore, Miller & Mayfield* for appellant.

(1)  The verdict of the jury was the result of bias and prejudice of the citizens of Dallas county. Defendant being a non-resident and the deceased a resident of Dallas county, the matter being fully discussed by the press and the public, sympathy in his behalf created such a bias and prejudice against defendant that he should have had his change of venue to some county in the same circuit where neither had resided and where each would have had equal footing.  (2) The trial court erred in not permitting defendant to show that he demanded at various times prior to the tragedy a peace warrant against the deceased. This evidence was very material, in that it was a circumstance which the jury had a right to consider as an act of good faith on the part of defendant, whether or not he was justifiable in the act and at least a circum-

stance tending to mitigate the inference of bad faith and a malicious heart bent on mischief. (3) The trial court erred in refusing the instructions offered in behalf of defendant They were wholesome and relevant instructions, especially number eleven, to the effect that Mrs. Atchley, wife of defendant, owned one-half interest in the milling property, and had a right to be in and around the mill to see and look after her interest. (4) The court erred in allowing the State, on cross-examination of Mrs. Atchley, wife of defendant, to testify, over the objections of defendant, to matters not examined in chief. She being the wife of the defendant, the same rule of law and evidence on cross-examination would apply to her as it would to defendant.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The action of the trial court in passing upon the application for a change of venue on account of the bias and prejudice of the inhabitants, is a matter of discretion resting largely within the breast of the trial court, and will not be disturbed unless this discretion is shown by the record to have been abused. State v. Thompson, 141 Mo. 414; State v. Wilson, 85 Mo. 339; sec. 2576, R. S. 1899. (2) The instructions given by the court of its own motion were competent and proper. They were fully authorized under the facts of the case. Those offered by defendant were each fully covered by those given by the court of its own motion, and no complaint can, therefore, be made to the refusal of the court to give those offered. Reasonable doubt is sufficiently defined. State v. Knock, 142 Mo. 524; State v. Sacre, 141 Mo. 67; State v. Nueslin, 25 Mo. 111. The instructions on inference, willfullness, intent, malice aforethought, deliberation and premeditation were correct. State v.

Talbot, 73 Mo. 351; State v. Herrill, 97 Mo. 111. The court also properly instructed the jury that defendant had the right to act upon appearances. State v. Smith, 114 Mo. 406. Even though some of the instructions offered by defendant may have been competent, yet the principles embodied in them were contained in the instructions given by the court of its own motion, and it has been held by this court on various occasions that no error was committed by refusing defendant's instructions, even though they may state correct principles of law as applicable to the evidence, provided the same propositions be covered in other instructions. The reason for this is that a multiplicity of instructions must be avoided. State v. Herrell, 97 Mo. 105; State v. Owens, 78 Mo. 367; State v. Reed, 117 Mo. 604; State v. Jones, 78 Mo. 278; State v. Parker, 106 Mo. 217; State v. Gamble, 119 Mo. 427. Where the instructions given, taken all together, place before the jury every hypothesis presented by the evidence, no serious complaint can be alleged against them, nor can the trial court be charged with error because of its failure to give certain instructions offered by defendant. State v. Minten, 116 Mo. 605; State v. Novenger, 108 Mo. 116.

GANTT, J.—On the 3rd day of December, 1902, the prosecuting attorney of Dallas county began this prosecution by filing in the office of the circuit clerk the following information:

"In the Circuit Court of Dallas county, October adjourned Term, 1902.

"State of Missouri,

vs.

"Benjamin Atchley.

"W. C. Hawkins, prosecuting attorney within and for Dallas county, Missouri, informs the court and charges that Benjamin Atchley on the 22nd day of No-

vember, A. D. 1902, at the county of Dallas and State of Missouri, upon one William Bramwell then and there being, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and with a certain deadly weapon, to-wit, a stick of wood of the length of two and one half feet and of the thickness of two inches, which he, the said Benjamin Atchley in his hands then and there had and held him, the said William Bramwell feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought, did strike, and beat upon the head and body of the said William Bramwell, giving to the said William Bramwell then and there with the stick of wood aforesaid, upon the head and body of the said William Bramwell, certain mortal wounds, bruises, contusions and fractures, of which said mortal wounds bruises, contusions and fractures the said William Bramwell from the 22nd day of November, 1902, until the 26th day of November, 1902, at the county aforesaid did languish and languishing did live, on which said 26th day of November in the year aforesaid the said William Bramwell at and in the county aforesaid of the mortal wounds, bruises, contusions and fractures aforesaid died.

"And so the prosecuting attorney aforesaid does inform the court and charge that the said Benjamin Atchley, him the said William Bramwell in the manner and by the means aforesaid feloniously, willfully, deliberately, premeditatedly and of his malice aforethought did kill and murder, against the peace and dignity of the State.

"W. C. HAWKINS,
"Prosecuting Attorney.

"W. C. Hawkins, prosecuting attorney, makes oath and says that the facts stated in the foregoing information are true according to his best information and belief.

"W. C. HAWKINS.

"Subscribed and sworn to before me this 3rd day of December, 1902.

"JOHN A. LAMM,
"Clerk Circuit Court."

On the same day the defendant was arrested and held to answer to the April term, 1903, of the circuit court of Dallas county.

The defendant was duly arraigned on the 6th day of April, 1903, and entered his plea of not guilty, and a continuance was granted on his application until July 20, 1903, and bail refused. On July 20th the cause was continued to the October term, 1903.

Upon previous notice, at the October term, 1903, an application for a change of venue from Dallas county was made by the defendant, on the ground of the prejudice of the inhabitants of said county.

The evidence pro and con on this application was heard and the change of venue denied. Thereupon an application based on the prejudice of Judge Cox was filed and sustained, and Judge James T. Neville of the Springfield circuit was called to try the case, and Judge Neville appeared and took charge of the case and granted a continuance until November 16, 1903.

On the 16th of November, 1903, the cause proceeded to trial. A jury was duly empaneled and the evidence heard. On November 20th the jury returned a verdict of guilty of murder in the second degree and assessed defendant's punishment at twenty years in the penitentiary, and after his motions for a new trial and in arrest had been heard and overruled, he was sentenced in accordance with the verdict. From that sentence he appeals to this court.

The bill of exceptions was filed, by leave of the court and pursuant to extensions of the time therefor, on April 29, 1904.

The evidence in substance tended to prove that on the day of the homicide the defendant, Benjamin Atch-

ley, and the deceased, William Bramwell, were copart-
ners in a mill located at Long Lane, twelve miles east
of Buffalo, the county seat of Dallas county. Prior
to going into partnership with Bramwell, Atchley and
his family resided for many years in Lebanon, La-
clede county. Atchley and Bramwell were equal part-
ners in the mill. Very soon after they purchased the
mill they made an order for some necessary repairs
each agreeing to pay his half of the cost thereof.

It appears that defendant paid his half, but Bram-
well failed to meet his part. Owing to his default a
mechanic's lien was threatened; thereupon Mrs. Atch-
ley, the wife of defendant, borrowed money on her
separate estate to pay $160 which the deceased owed,
and paid it off, and took a note for that sum secured
by a mortgage on the half interest of the deceased in
the mill. The evidence also tends to show that the de-
ceased collected various debts due the firm, for which
he had not accounted, aggregating perhaps $159.

On account of this method of the deceased in do-
ing the business a bad state of feelings arose, and was
existing on the 22nd day of November, 1903, the date
of the homicide.

Wilkerson, a witness for the State, says he went
to the mill about the middle of the afternoon. When
he first reached there it seemed that Bramwell, the
deceased, was looking over the mill for some grinding
that was missing and had the book in his hand. He
went to the stairway that led down to the engine room,
where defendant was at the time, and called defend-
ant, and the latter came partly up the stairway, with
his head and shoulders above the floor. Deceased asked
defendant if he knew anything about the missing
grinding, and he said "No, I don't." Deceased said he
could not find it and handed defendant the book. De-
fendant took it, looked at his name, and threw the book
on the floor from him some five or six feet. He then
turned and went down to the engine room. Just after

this, witness went out on the porch of the mill, and as he did so, met Mrs. Atchley, the wife of defendant, going in. As she went in she said, "It is horrible the way this man is getting away with the grinding and he accuses us of getting away with it."

She went up to Bramwell, the deceased, who was engaged in grinding some corn and was on his knees about the corn-buhr stones with his hand on the wheel that gauges the mill. He heard her speak to deceased, but could not distinguish what she said, but in answer deceased said, "It is missing and it has to be made up to him." She replied, "I don't make up anything." The next thing he heard was a heavy step on the floor and then a lick and immediately afterwards another lick. He rose and started toward the deceased and defendant and saw defendant strike deceased a third lick with a stick which he held in both hands. When defendant struck the third lick Bramwell was lying on the floor with his mouth against the corn-buhrs, on the left side. Witness ran between them and defendant said, "I will kill the d—n s—of—b. No d—n s—of—b— can call my wife a bitch."

Witness was on the porch about twenty feet distant when the conversation between deceased and Mrs. Atchley took place. Ed. Warner was with witness. In addition to the remarks already noted, he says, he heard deceased say to Mrs. Atchley, "You get out of here" and she said, "I don't have to get out of here" and the deceased said, "No, you don't have to get out of here, but you don't know anything about this."

Immediately after witness ran between the defendant and deceased, defendant turned and went downstairs with the stick in his hands—and stopped the mill and then went up to the town. Witness and a young man named Holman dragged the wounded man out on the porch.

Warner corroborated Wilkerson as to the occurrences leading up to the fatal blows. He says Mrs.

Atchley was demanding of deceased information as to the grain that was missing, and he said some of it went to make up for some lost grinding. And she wanted to know what went with the lost grindings, and he asked her what went with a grinding of seven bushels that disappeared when he had been absent for two weeks. After this character of conversation he told her to go to the house; the more she talked the less people thought of her. She replied, she would not go until she got ready, and he laughed and said, "I know you won't." About that time she called her husband, the defendant, and he came up from the engine room. He saw defendant strike deceased three blows with a stick while deceased was down on his knees. His first lick was on the back of the head or neck. After that deceased did not move.

The physicians, Drs. Craig and Coy, testified that the skull of the deceased was fractured above and behind the left ear. This wound was the cause of his death. The physicians did not cut into the two other wounds on his back.

For the defense, Mr. Mayfield testified as to the settlement of Bramwell's half of the cost of the repairs and for the $159 he had collected and failed to account for. This was about six weeks before the homicide. At that time the deceased expressed a very bitter feeling toward Mrs. Atchley, and said she annoyed him coming about the mill and that he was going to hurt her if she didn't keep out of the mill. Expressed great contempt for her. Bramwell, the deceased, was intoxicated when he was making this settlement, and using these expressions of hatred toward Mrs. Atchley. He gave his reason that she came to the mill and harassed him and exercised authority over things.

The defendant offered to prove that defendant went to a justice of the peace, Mr. Brownfield, to have Bramwell put under a bond to keep the peace, but on

objection by the State this was excluded, and defendant excepted.

This witness stated that Bramwell asked him if Atchley had issued any papers against him and when told he had not, said it was a good thing; that if he had he would hurt him. He was drinking at that time.

Thos. Shelton testified that about two weeks before the killing he was at the mill, and heard a quarrel between Mr. and Mrs. Atchley and deceased. She accused Bramwell of stealing the money of the mill to buy whiskey and tobacco. Bramwell called her a liar, and said he could prove that her son stole money while they were repairing the mill; told her to bring her man, that she did not have a man, "just a thing." Bramwell was somewhat intoxicated at the time.

Cass Hale about the same time heard the same or a similar quarrel between Mrs. Atchley and deceased. Heard deceased say if she was a man he would blow her brains out, or something that way.

Marion Butram testified that about a month prior to the killing he was at the mill and heard a quarrel or wrangle between deceased and Mrs. Atchley about the same purport of the quarrel that Hale heard.

Geo. Kreller, who taught school in the district and followed the trade of a barber on Saturdays, testified to seeing the deceased have a pistol in his hip pocket on two occasions, and on one, to have heard him say Atchley didn't have sense enough to do business and had let the fire go out in the engine; that he wished he was dead and out of the road.

William Kelsey, Jr., testified to a conversation with deceased in which the latter said: "We have been having h—ll here." Speaking of his partner, the defendant, he said: "That dirty brute he is living with is the cause of it. She is a dirty bitch. I will get him yet and you mark down what I tell you."

Wade Richardson testified to seeing deceased raise an ax as if he was going to strike defendant with

it about a week or two before defendant killed him. They had a quarrel about running the mill. He also testified that deceased called "Mrs. Atchley a dirty black bitch."

Joe Eagle testified to sleeping at the mill one night, and late in the night he and deceased were in the mill, and defendant stuck his head in the door twice and looked in and when he did it the second time deceased said he had better not fool with him tonight or he would "fix him." After they had made down a bed and retired for the night, he heard a racket outside and deceased got up and went to the door, and witness asked what was the matter, and he said he believed "that s— of b— is out there fooling around out there. D—n him, I would just like to shoot" or "kill him," he didn't remember which, and would "like to fix his woman the same way." He and deceased both had taken several drinks.

This witness admitted to considerable interest in the case. Had taken part in seeing an attorney for the defense.

Mrs. Atchley, the wife of defendant, testified in his behalf. After detailing the purchase of one-half interest in the mill and the payment of the cost of repairs and the taking of a note and mortgage on the interest of the deceased in the mill, she testified to the bad state of feeling existing between herself and deceased, growing out of the mill business. She testified that the deceased called her hard names and said she had no man, "only a thing and a low down rascal;" threatened to kill her at a great many times, and said to her, "Because you are a woman you think I won't hurt you." He was drinking all the time. She knew he carried a pistol. One evening he ran her and her husband out of the mill. She had seen him carry a knife. As to the difficulty in which deceased was killed she gave the following version:

Mr. Bramwell, the deceased, called the defendant

up from the engine room into the mill room late in the afternoon. She heard loud talking and was frightened. · She called her husband down into the engine room. She saw Bramwell have a book in his hand. Defendant started down and let the book fall, and said, "I will have no more to do with it," and went on down into the engine room. Bramwell said, "If you don't make that right I will blow your brains out."

She then went up into the mill room, and went to the front door, and was talking with some gentlemen there, and she told them it was horrid, how deceased was getting away with the grain and laying it on herself and husband, and that he got the money and was not accounting for. it. She then started through the mill to go down into the engine room, but before she got to the stairway the deceased stepped before her and would not let her pass and looked awful hard. He then stooped down to fix the grain buhrs and she went around and as she did so, she asked him where ————'s flour was. He said, "You stole it, you low down bitch, you stole it." "I said if there was any stole you did it yourself," and he raised up and struck me, and said, "Get out of here, you damn bitch," and I went on down into the engine room, and her husband, the defendant, passed her going up the steps, and said to deceased, "Stop," and deceased said, "I mean it, G—d d—n you." Deceased struck me on the right arm as I turned to go down the steps. She did not see defendant strike deceased. Deceased was willing to make settlement with her and went with her to Mr. Mayfield's office. The settlement was satisfactory.

About two weeks after that they had trouble again trying to get deceased to make a settlement. Every time they talked about it they had harsh words. Deceased claimed defendant was stealing and she told deceased if there was any stealing he was doing it or getting away with it. She knew he was.

Finally they talked of deceased buying them out. She kept going to the mill and usually wound up with a quarrel with the deceased. This continued a month or two. She denied talking to Wilkerson and Warner on the day of the difficulty. When she started down the stairway deceased was stooping down with his hand on the wheel adjusting the corn-buhrs, and as she passed she said if anything was stolen he did it; he rose and struck her on her arm, and she ran down the steps and defendant came up. She did not see him have anything in his hand. She heard the difficulty upstairs, but didn't go back. She went out and met Mr. King and told him there was a fight in the mill. King was hurrying to the mill.

Defendant testified in his own behalf that on various occasions deceased had threatened him with violence, had drawn an ax on him, and on one occasion a pistol; that he was afraid of him and afraid to stay in the mill with him without some one . else present, and that was the reason his wife stayed there so much. He testified that on the day of the killing deceased told him he would blow his brains out if he didn't make up a sack of wheat that was missing; that he told deceased he hadn't been running the mill, and knew nothing about it, and would have nothing to do with it, and went down to the engine room; that he heard loud talk between his wife and deceased, and heard deceased call her a bitch, and he started up stairs and saw deceased strike his wife, and called to him to stop, and stepped between them, and deceased threw his hand behind him and says, ''I mean it,'' and thereupon he hit deceased with the stick which he had been using as a poker, but had no intention of killing him. After he knocked him down, he drew himself up in a shape he thought he was trying to get a weapon, and then he struck him again, and guessed he hit him harder than he intended to. He struck him to keep him from injuring his wife and himself.

Defendant offered evidence that his reputation as a peaceable, law-abiding man was good in the neighborhood where he had resided for many years.

. In rebuttal the State offered evidence tending to prove the deceased was a man of good reputation as a peaceable, law-abiding citizen, and also evidence tending to contradict the testimony of defendant and his wife. As to the alleged threats and indecent remarks to Mrs. Atchley, and the testimony as to the striking of Mrs. Atchley by deceased, the evidence tended to show deceased had no arms on his person when he was slain.

At the close of the evidence the defendant prayed the court to give twelve instructions, which the court refused, and defendant excepted. Thereupon the court gave of its own motion the following instructions, to which defendant excepted:

"The information in this case charged the defendant with murder in the first degree in the killing of one William Bramwell. This charge of murder in the first degree includes also the charge of murder in the second degree, and the charge of manslaughter in the fourth degree.

"You can, therefore, find the defendant guilty of murder in the first degree, murder in the second degree, or manslaughter in the fourth degree, or acquit him on the ground of the necessary defense of himself or of his wife, as the evidence in this case, under the instructions, in your opinion, justifies.

"The information is the mere formal charge against the defendant, and is not to be considered by you as any evidence of the defendant's guilt. The law presumes the defendant to be innocent of the charge against him, and this presumption follows him and protects him throughout the trial until it is overcome by the evidence in the case to such a degree as to leave in your minds no reasonable doubts of his guilt. Therefore, before you can convict the defendant, you

must be satisfied of his guilt from the evidence beyond a reasonable doubt, but to authorize an acquittal on the ground of reasonable doubt alone such doubt should be a substantial doubt arising out of the evidence or want of evidence in the case, and not a mere possibility of the defendant's innocence.

"You are the sole judges of the credibility of the witnesses and of the weight and value to be given their testimony. In passing upon the weight to be given the testimony of the witnesses, you may take into consideration their demeanor on the stand, their interest, bias or prejudice, if any be shown, their relationship to the parties, if any, the reasonableness or unreasonableness of the story related by them, their opportunities for knowing the facts to which they testify, and any and all other facts and circumstances which, in your judgment, would add to or subtract from their credibility. If you believe any witness has made statements out of court contradictory to the statements made on the witness stand in the trial, then you will consider such facts, together with all the other facts and circumstances in evidence, in passing upon the weight to be given the testimony of such witness. And if you believe that any witness has intentionally sworn falsely to any material facts in the case, you are at liberty to disregard any part or all of such witness's testimony.

"The word 'willfully,' as used in these instructions, means intentionally; that is, not accidentally. Therefore, if the defendant intended to kill, such killing is willful. In the absence of qualifying facts and circumstances, the law presumes that a person intends the ordinary and probable results of his acts. 'Feloniously' means wickedly; that is, against the admonitions of the law. 'Premeditatedly' means thought of beforehand for any length of time, however short. 'Malice,' as used in these instructions, does not mean mere spite, ill-will or dislike, as it is ordinarily under-

stood, but it means that condition of the mind which prompts one person to take the life of another without just cause or justification, and it signifies a state or disposition which shows a heart regardless of social duties and fatally bent on mischief. 'Malice aforethought, means that the act was done with malice and premeditation. 'Deliberately' means in a cool state of the blood; that is, not in the heated state of the blood caused by lawful provocation. It does not mean brooded over, considered or reflected upon for a week, a day or an hour, but it means an intent to kill, executed by a party not under the influence of violent passion suddenly aroused by some lawful provocation, but in the furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose.

"If you find from the evidence that the defendant, at the county of Dallas and State of Missouri, on the 22d day of November, 1902, willfully, feloniously, premeditatedly, deliberately and of his malice aforethought killed William Bramwell, then you will find the defendant guilty of murder in the first degree. If you find the defendant guilty of murder in the first degree you will say nothing in your verdict as to the punishment, as the punishment is fixed by law and is not a matter for you to pass upon.

"If you find from the evidence that the defendant, at the county of Dallas and State of Missouri, on the 22d day of November, 1902, willfully, feloniously, premeditatedly and of his malice aforethought killed William Bramwell, but that the same was done without deliberation, as herein defined, then you will find the defendant guilty of murder in the second degree, and assess his punishment at imprisonment in the State penitentiary for a term of not less than ten years.

"If you find from the evidence that the defendant wrongfully and feloniously struck the deceased with a club and killed him, but that such killing was not de-

liberately done and was not done in malice afore-
thought, as those terms are herein defined, then you
will find him guilty of manslaughter in the fourth de-
gree and assess his punishment at imprisonment in the
State penitentiary for a term of two years or by im-
prisonment in the county jail not less than six months,
or by a fine of not less than five hundred dollars, or by
both fine of not less than one hundred dollars and im-
prisonment in the county jail not less than three
months.

"If the deceased had just stricken the defendant's
wife or if he was pursuing her threatening to strike
her, and if the defendant knew of such fact or facts,
and if such occurrences aroused in his mind a passion
to such an extent that he did not deliberate and did not
act of his malice aforethought, but acted upon the im-
pulse of such passion, then, although the defendant
may not have been fully justified under the law of self-
defense, or under the law of the defense of his wife,
as herein explained, yet such facts so occurring would
make the killing manslaughter in the fourth degree,
or if under like circumstances the defendant in de-
fense of his wife used more and greater force than to
him seemed reasonably necessary at the time, such
killing would be manslaughter in the fourth degree.
You will note this distinction in the law, that if the de-
fendant killed the deceased for and on account of a
blow or lick inflicted by deceased upon defendant's
wife, or for or on account of a pursuit of her by de-
ceased, then such killing, although not justifiable in
your judgment, under the instructions may be only
manslaughter, whereas a premeditated killing, for and
on account of words alone, such as violent abuse, or the
calling of opprobrious names, unaccompanied by at-
tempted violence, is not reduced below murder in the
second degree.

"The defendant is a competent witness in his own
behalf, and his testimony should be weighed by the

same rules that govern the testimony of other witnesses, but in passing upon the weight to be given to his testimony, you may take into consideration the fact that he is the defendant in the case and his interest in the result of the trial.

"The defendant's wife is a competent witness in the case, and her testimony is to be weighed by the same rules that govern the testimony of other witnesses, but in determining the weight and value that will be given her testimony, you may consider the fact that she is the wife of the defendant and her interest in the result of the trial.

"If you find from the evidence that the deceased had, previous to the difficulty that resulted in his death, made threats against the defendant, or his wife, or had at any time previous thereto assaulted the defendant or his wife, or had approached him or her in a threatening manner, you will consider such facts in determining who was the aggressor and in passing upon the conduct of the parties at the time of the killing, and if after considering it with all the other facts and circumstances in evidence you find that the defendant was the aggressor, and that he is guilty under these instructions, then such prior threats or assaults, even if true, are no justification to the defendant.

"If such former threats and assaults by the deceased were known to the defendant at the time of the killing, then in passing upon defendant's conduct at the time you will consider the fact that defendant knew of such threats and such assaults, as under such circumstances defendant might be justified in acting upon less appearances of danger than in case no such threats or assaults had been theretofore made.

"Every man has a complete and lawful right to defend himself, or the person of his wife, from the wrongful attacks and assaults of others. If, therefore, you find from the evidence that at the time the defendant struck the deceased, he, the deceased, was

either pursuing defendant's wife or advancing on the defendant in a threatening manner, and if you believe from the evidence that at the time the defendant believed and had reasonable cause to believe that the deceased was about to inflict upon the defendant or defendant's wife, some personal injury, and that such injury or apparent injury was impending and immediately about to fall, then in order to prevent such apparently impending injury, defendant was justified in striking the deceased, and in such case he was not called upon to nicely gauge the amount of force necessary to repel the assault, but he had a right to use any and all means at his command, which seemed to him at the time reasonably necessary. Bear in mind that the defendant had a right to act in such defense upon the appearances as they presented themselves to him at the time; it is not necessary to this defense that such danger in fact existed, or that such injury was really impending; all that is required is that the defendant, from the appearances, had reasonable cause to believe and did in fact believe them to exist. It is for you to determine from a consideration of all the evidence in the case whether or not the deceased was making any demonstration toward the defendant or his wife, and whether or not the defendant believed or had reasonable cause to believe that danger was impending.

"If you find from the evidence that the defendant acted in self-defense or in defense of his wife, as those defenses are herein defined, then you will find him not guilty.

"You are to receive the testimony of verbal statements of the defendant in the nature of admissions with great caution, owing to the fact that such verbal statements are liable to have been misunderstood by the persons hearing them. You are to consider all of any one such statement or admission together; what the defendant may have said against himself, if anything, the law presumes to be true, because admitted against

his own interests; what he may have said in his own favor, if anything, you are not compelled to take as true on account of its having been in a statement proven by the State, but you are to accept the same as true or reject it as false, as you believe the right to be from a full and fair consideration of all the facts and circumstances in evidence.

"If you find from the evidence that the defendant has heretofore borne a good character as a quiet, peaceable, law-abiding man, then you are to consider that fact along with the other circumstances in the case in determining his guilt or innocence, as it is presumed in the law that a man of previous good character is less liable to commit a crime, than one of previous bad character. But if after considering all the facts and circumstances in evidence, that of good character included, you find that the defendant is guilty of either degree of crime included in the charge in the information, then his good character, however well established, would neither justify, palliate or mitigate the offense."

To the giving of each and every one of the above instructions by the court, defendant, by counsel, then and there at the time duly objected and excepted.

I. The first ground upon which a reversal is sought is that the court erred in denying defendant a change of venue from Dallas county on account of the prejudice of the inhabitants of said county against defendant.

On this point the defendant introduced twelve witnesses who testified to prejudice in their respective neighborhood against defendant, and on the part of the State fourteen witnesses were examined and in their opinion there was no prejudice against the defendant.

Upon a careful reading of the evidence on this application we are of opinion the trial court was justified in denying the application.    The judge had the

witnesses before him and could observe their de-
meanor and manner of testifying, and before revers-
ing his action thereon we must be satisfied his finding
was clearly against the evidence. We discover noth-
ing to justify us in saying he abused his discretion.

II. The defendant offered to prove that a short
time prior to the homicide, the defendant went to a
justice of the peace and asked to have deceased put
under a bond to keep the peace. The circuit court
excluded this evidence. The justice did not grant the
request. The deceased was not summoned and was
not present when the demand was made.

The application for a peace warrant, made in the
absence of the deceased, could at most have amounted
to no more than proof of the defendant's own dec-
larations, and his statement thus made was not compe-
tent in his own behalf. It was a self-serving state-
ment and one is not permitted to make testimony
for himself in this manner. [State v. Maguire, 113
Mo. 670; State v. Van Zant, 71 Mo. 543.]

The defendant was a competent witness in his
own behalf and testified as such. If the conduct of
deceased was such as would require the justice to
place him under a bond to keep the peace, the defend-
ant could have testified to those facts while under oath
and that which he could prove by his sworn state-
ments he is not permitted to prove by statements
which are unsworn.

In fact he and his wife both testified to acts and
declarations of deceased which if believed by the jury
would have mitigated his offense, if, indeed, it had
not entirely justified him.

We think it is clear no error was committed in
excluding the offer.

III. By reference to the instructions given by the
court it will be observed that the court de-
fined all the elements of murder in the first and second

degree and manslaughter in the fourth degree. It gave the full and often approved instruction on self-defense, both of himself and his wife; the competency of defendant and his wife to testify; the consideration to be given to any threats made by the deceased; the good character of defendant and the weight of testimony.

While some of defendant's instructions were correct, all the propositions of law arising on the facts developed in evidence were covered by the instructions of the court, and there was, therefore, no error in refusing defendant's instructions.

Indeed counsel in their brief only point out the refusal of the 11th instruction as error.

That instruction is as follows:

"11. The court instructs the jury that it is an undisputed fact in this case that Mrs. Atchley, the wife of the defendant, owns one-half interest in the mill, and, therefore, you are instructed that she had a right to be in and around the mill and look after her interest."

It is true, we think, that the evidence discloses that one-half of the mill was purchased with Mrs. Atchley's money, and there was no effort on the part of the State to deny this, but it does not follow that any error was committed in refusing the instruction for that reason. A careful reading of the evidence demonstrates that the deceased recognized that right. He did not dispute her right to one-half of the mill. He did object to her charging him with stealing the grain or embezzling the moneys collected by him. We think it was wholly unnecessary to instruct that a certain fact existed which no one denied and which in no way by itself occasioned the unfortunate homicide.

IV. It is insisted for the first time in this court that the court permitted the prosecuting attorney to cross-examine the wife of defendant on matters on

which she was not examined in chief.    No objection was made to any question propounded to her on her cross-examination on this ground, and the court's attention was not called to such a point.    Moreover, it was not made a ground of the motion for new trial and was therefore waived.    [State v. Mills, 88 Mo. 417; State v. McDonald, 85 Mo. 539.]

V.   The testimony was contradictory on the pivotal points in the case; that of the State tending to establish, by eyewitnesses who were not exceeding twenty or twenty-five feet distant, that the deceased was slain by defendant while the deceased was down on his knees busily engaged in manipulating the wheel which regulated the mill.    That evidence, by irresistible inference, contradicts the evidence of defendant and his wife that, just prior to the assault upon deceased by defendant, deceased had struck Mrs. Atchley with his hand and had called her a dirty bitch. The defendant and his wife both testified that deceased had struck Mrs. Atchley and was in the very act of pursuing her, when her husband came up the steps from the engine room and stepped between her and deceased, and to prevent deceased doing her further harm then and there struck deceased with the club.

Upon this conflict of evidence the jury alone could pass.    There is nothing in their verdict which smacks of passion or prejudice.    They saw the witnesses and heard the evidence.    If they were convinced that the disinterested witnesses told the truth, there was ample evidence to sustain their verdict of murder in the second degree.    The defendant slew the deceased with a deadly weapon, and if the State's witnesses are credited, he slew him while deceased was down on his knees, engaged in manipulating the mill wheel, and was unarmed and making no demonstration of violence toward either defendant or his wife, and even if de-

ceased had applied the insulting epithet to defendant's wife, if these words of reproach were not accompanied by any blow or assault, they were not sufficient provocation to reduce the homicide to manslaughter.

This is the settled law of this State.    It follows that the verdict can not be disturbed on the ground that it is the result of passion or prejudice.

VI.    We have considered all the propositions advanced by learned counsel for defendant in their brief, but there is one point not urged by them which is apparent on the face of the information, if it is well taken.    It is that, neither in the charging part nor in the conclusion of his information herein, has the prosecuting attorney of Dallas county said that *"upon his official oath"* or "upon his oath" the said Benjamin Atchley willfully, deliberately, premeditatedly and of his malice aforethought him the said William Bramwell in the manner and form and by the means aforesaid did kill and murder, against the peace and dignity of the State.    In State v. Coleman, this day decided, reported at page 151 of this volume, my brethren hold the words "upon his oath" or *"upon his official oath"* are essential to an information for murder, from which view I dissented for the reasons given by me in that case, but deferring to the opinion of my brethren, it must be held that this information is insufficient for omitting those words in the conclusion thereof, and accordingly the judgment and sentence of the circuit court of Dallas county is reversed, and the cause remanded so that a new and sufficient information may be filed.

*Brace, C. J., Burgess, Valliant, Fox* and *Lamm, JJ.,* concur; *Marshall, J.,* absent.