THE STATE v. FRANK DAWSON, Appellant.

**In Banc, February 28, 1905.**

**INFORMATION: Upon Oath: Murder.** In the concluding part of an information meant to charge murder, the prosecuting attorney should inform the court that "upon his oath aforesaid" the said defendant did kill and murder, etc. The same rule for good pleading applies alike to an information or indictment. Neither is sufficient to charge murder unless the concluding charge is based upon oath. An information which fails to state in its conclusion that the prosecuting attorney "upon his oath aforesaid" does inform the court that defendant did kill and murder, etc.,· charges only manslaughter.

Appeal·from Monroe Circuit Court.—*Hon. D. H. Eby,* Judge.

REVERSED AND REMANDED.

*T. T. Rodes* and *W. E. Whitecotton* for appellant.

(1) The information is bad in that it fails to state that James P. Boyd, prosecuting attorney, upon his oath charges the defendant with murder. This court has repeatedly held that an indictment returned by a grand jury charging a defendant with murder must, in the charging clause, include the words, "upon their oaths," etc. State v. Furgerson, 152 Mo. 92; State v. Sanders, 158 Mo. 610; State v. Cook and Frogge, 170 Mo. 211. (2) Upon what ground and what theory of reasoning can it be successfully contended that this requirement should not apply to informations as well as to indictments? The Legislature never intended any abridgment of the Bill of Rights as to any guarantee under the same, further than the giving to the prosecuting attorney the power and authority under our Constitution by said amendment to prefer the same charge by information, but with all the restrictions and

State v. Dawson.

limitations required by law of grand juries as to the charging part of the information. This amendment changed the fundamental law as to the procedure, but nowhere authorized any limitation or modification as to the substance of the charge. State v. Meyers, 99 Mo. 116; State v. Sanders, 158 Mo. 610.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) No relevant, material or competent evidence was refused the jury, which was offered by the defendant. As to the introduction of evidence and the action of the court in admitting the same, the record is clear and contains no error whatever. (2) Counsel for appellant raise the point that the information is bad, in that it fails to state that the prosecuting attorney, "upon his oath," charged the defendant with murder. It is true that, with reference to indictments, this court has repeatedly held that the grand jury must, at the closing part of the indictment, and where murder is charged, declare "upon their oaths." This requirement, however, is unnecessary upon the part of the prosecuting officer where the charge comes by way of an information. It will be observed that the statute nowhere requires the prosecuting officer to charge the information upon his oath of office. At common law, two forms of proceedings may be followed: First, by indictment, and second, upon information. In the first instance it has always been the rule to require the grand jury to make the charge "upon their oath," as set out in the indictment. In the second instance it has never been held at common law necessary for the prosecuting officer to aver in the information that the charge was preferred upon his oath of office. Doubtless this idea of its being necessary for him to state that the charge was preferred upon his oath of office grows out of the fact that in several States, and especially

in misdemeanor cases, the prosecuting attorney is expressly authorized by statute to file an information alleging the offense and that he does so upon his oath of office. The constitutional provision in this State, supplemented with the statutory requirement that an information in felony cases shall be verified, does not contemplate that the officer shall state in the information that it is filed upon his oath of office. He files it under the common law and the Constitution and the statute, as a right delegated to him, and the mere statement that the charge is preferred upon his oath of office is surplusage. The question here presented is identical with a similar proposition raised in the case of State v. Coleman, 186 Mo. 151. It is of first impression in this State, and does not seem to have been recently raised directly in any of the courts of the country where crimes are prosecuted by information. So far as we have been able to observe, however, as early as 1816 the Constitution and statutes of the State of Vermont permitted felonies to be prosecuted upon the information of the State's attorney, and it was there held that, in an information by the State's attorney, it is not necessary for him to state that he informs upon his oath of office. State v. Sickle, 1 Brayt. 132. It seems to have been the general rule that informations might be filed by the prosecuting officer, and this is permitted by virtue of his official character, and it is not necessary for him to state in the information that the charge is preferred upon his oath of office. An averment of this character is to be looked upon as surplusage.

BURGESS, J.—During the December term, 1903, of the circuit court of Monroe county, and on the eighth day of said month, there was filed in said court an information by the prosecuting attorney of said county, in which the defendant Dawson was charged with having on the fourth day of December, 1903, at

said county, feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought shot and killed with a pistol one Anna Hartman. Upon trial thereafter had before the court and a jury, defendant was convicted of murder in the ·first degree, and his punishment fixed at death. He appeals.

The facts disclosed by the record are substantially as follows:

The deceased, Anna Hartman, and the defendant, at the time of the homicide, lived in the same neighborhood in Monroe county, the former at or near Madison in said county. On the afternoon of the fourth day of December, 1903, there was a dance at the residence of George Ownby, which was a few miles from Madison. The deceased, Anna Hartman, was present, together with a large number of other young people residing in that community. The defendant had been drinking in the afternoon and at about five o'clock on the day in question went to a hardware store kept by William F. Walker and borrowed a revolver, at the same time purchasing some cartridges. Sometime prior to this, defendant had apparently fallen in love with the deceased, Anna Hartman. They, however, had some disagreement prior to September, 1901, and from that date until the commission of the homicide defendant is shown to have made repeated threats in which he stated that he would kill her before she should marry any one else. Defendant went on horseback from Madison to the Ownby home, arriving there about seven-thirty, p. m. After becoming somewhat intoxicated at Madison, he put two pint bottles of whiskey in his pocket and started to the dance. On his way he fell from his horse twice. After reaching the home of Mr. Ownby, he mingled with the crowd and to several parties stated that he intended to kill some s— of a b— before they danced two rounds. About half past eight o'clock, friends of the defendant put him on his horse and started him home. In about one-half an

hour, however, he returned and exhibited his revolver. This was taken from him, but finally, upon defendant's statement that he intended to give it to another friend, it was returned to him. About half past nine or ten o'clock, defendant came to the door of the room where the dancing was going on, and just as the dance commenced he started across the room, pointing the revolver at the deceased, Anna Hartman, and fired.

Tom Engle and the deceased were dancing as partners. As soon as defendant fired the first shot, Engle grabbed him and pulled him to the floor, but during the scramble, defendant fired two more shots. Two bullets took effect in deceased's left breast, from the effect of one of which she died soon afterwards. Defendant then left the house as rapidly as possible.

On cross-examination of Mrs. Ethel Ownby, she stated that deceased immediately after the shooting said she did not see why Frank Dawson wanted to shoot her.

The defense interposed was that defendant was in a drunken condition and was not a man of strong mind; in fact, insanity was set up. There was an abundance of evidence showing defendant to be a young man of good character; on the other hand, quite a number of witnesses testified that his reputation was not good.

The first point presented for our consideration on this appeal is with respect to the sufficiency of the information, which defendant claims is bad because it does not conclude as required in case of homicide prosecuted by indictment. The information concludes as follows: ''And so the said James P. Boyd, prosecuting attorney of and within and for the county of Monroe and State of Missouri as aforesaid, does inform the court aforesaid, that he the said Frank Dawson, her, the said Anna Hartman, in the manner and by the means aforesaid, feloniously, willfully, premeditatedly, deliberately, on purpose and of his malice aforethought, at

and in the said county of Monroe and State of Missouri, on the said fourth day of December, A. D. 1903, did kill and murder, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State,'' but omits to allege that the said James P. Boyd, prosecuting attorney of and within and for the county of Monroe and State of Missouri as aforesaid, ''upon his oath aforesaid,'' does inform the court aforesaid, etc.

The contention is that the crime charged in the information is nothing more than manslaughter. In the case of the State v. Meyers, 99 Mo. 107, it is held that the conclusion of a count of an indictment for murder is just as essential as other portions of the count, and the concluding charge in such case should be by the grand jurors upon their oaths; otherwise, the previous words of the indictment will charge only manslaughter.

The same rule is announced in State v. Furgerson, 152 Mo. 92; State v. Sanders, 158 Mo. 610.

In State v. Cook and Frogge, 170 Mo. 210, GANTT, J., in speaking for the court, said:

''The indictment is not sufficient to sustain a conviction of murder. The indictment only charges manslaughter. As was ruled in State v. Sanders, 158 Mo. l. c. 612, an indictment under our Constitution means just what it did at common law. [Ex parte Slater, 72 Mo. 102; State v. Meyers, 99 Mo. 116.] At common law it was essential to an indictment for murder that it should state, ''and so the grand jurors, or jurors, aforesaid, upon their oath'' do say, etc. [Heydon's Case, 4 Coke 41b; 3 Chitty's Crim. Law, 750; Wharton's Homicide, sec. 49.] And an indictment for murder without these words is fatally defective. [State v. Furgerson, 152 Mo. 98.]''

If, as we have said, an indictment for murder at common law was not good unless it concluded as we

have intimated, there can be no reason why the same rule should not apply to prosecutions for murder by information, for if, as said in the Meyers case, the proper conclusion of an indictment for murder marks the feature of the offense which distinguishes it from manslaughter, the same distinguishing feature clearly applies to both indictments and informations for murder. [State v. Coleman, 186 Mo. 151, and State v. Atchley, 186 Mo. 174.]

The information, with the exception intimated, seems to be in compliance with the statute, and free from objection.

Before another trial the information will, in all probability, be amended so as to conform to the views before expressed, and, in that event, we are not inclined to pass any criticism upon the instructions that were given at the last trial, further than to say they seem to be correct upon the theory upon which the case was tried.

There is nothing disclosed by the record by which the court was called upon to instruct for murder in the second degree, or any grade of offense other than murder in the first degree.

For the reasons stated, the judgment is reversed and the cause remanded to be proceeded with in accordance with the views herein intimated.

All concur.