## THE STATE v. MORGAN, Appellant.

### Division Two, May 22, 1906.

1. **PRIVILEGED COMMUNICATION: To Minister of Gospel.** In order to render inadmissible statements made to a minister of any denomination, such statements must have been made to him in his professional character in the course of discipline enjoined by the rules of practice of such denomination. The mere fact that defendant made statements to a minister, who preached in the community where the alleged crime was committed, did not make such statements inadmissible.

2. **INSTRUCTIONS: No Exception.** Where the record shows no objections made or exceptions taken to the action of the court in giving and refusing instructions, the court's action in this respect is not subject to review in the appellate court.

3. **INFORMATION: Omission of Words "Upon His Oath:" Charges Manslaughter.** An information which fails, in its closing part, to state that the prosecuting attorney "upon his oath" does say, etc., while insufficient to charge murder, is sufficient to charge manslaughter.

196 Sup.—12

State v. Morgan.

Appeal from Howell Circuit Court.—*Hon. Wm. N. Evans,* Judge.

AFFIRMED.

*J. N. Burroughs* and *N. B. Wilkerson* for appellant.

Confessions made to a minister or priest in his official character and for the purpose of procuring spiritual advice are not admissible for any purpose. R. S. 1899, sec. 4659; Martin v. Bowden, 158 Mo. 379.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The information is sufficient to charge defendant with the crime of manslaughter, the crime of which he was convicted. While it does not use the closing form "on his oath aforesaid," yet in its present form it charges manslaughter. State v. Dawson, 187 Mo. 60; State v. Coleman, 186 Mo. 164. (2) "Under the statutes a communication, to be privileged, must be made by a penitent as an enjoined religious discipline to a priest, and do not cover a confession made to a clergyman not in the course of such discipline." 1 Wharton on Evid. (3 Ed.), sec. 597; Gillooley v. State, 58 Ind. 182; People v. Gates, 13 Wend. 324; Knight v. Lee, 80 Ind. 204; sec. 4659, R. S. 1899; Dehler v. State, 22 Ind. App. 391; 4 Wigmore on Evid., sec. 2395.

FOX, J.—This cause is here upon appeal from a judgment of the Howell Circuit Court convicting the defendant of manslaughter of the fourth degree. The information upon which this judgment rests was properly verified, and omitting formal part, is as follows:

"M. E. Morrow, prosecuting attorney within and for the county of Howell in the State of Missouri, informs the court that one Isom Morgan, on the 2d day

of August, A. D. 1904, at the said county of Howell, in and upon one Thomas Morgan then and there being, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and with a certain knife which he, the said Isom Morgan, in his two hands then and there had and held, him, the said Thomas Morgan, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did strike, stab and thrust in and upon the side of the body, giving to the said Thomas Morgan then and there, with the knife aforesaid, in and upon the side of the body of him, the said Thomas Morgan, one mortal wound, of the length of one inch, of the breadth of one inch, and the depth of three inches, of which said mortal wound the said Thomas Morgan then and there died, and so the prosecuting attorney aforesaid says and charges that the said Isom Morgan, him, the said Thomas Morgan, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought did kill and murder, against the peace and dignity of the State.''

Prior to the trial the prosecuting attorney elected to prosecute defendant for murder of the second degree, instead of murder of the first degree, which is attempted to be charged in the information. Defendant entered his plea of not guilty and the trial proceeded.

The evidence on the part of the State tends to show substantially the following state of facts: That the defendant lived on a farm which cornered with the farm of deceased, and the defendant's dwelling was near to said corner. That on the afternoon of the homicide the deceased was working in his tobacco patch near defendant's fence, hoeing tobacco. That the defendant sent his children to run off some cattle belonging to one Chestnut, and deceased stopped said children, threatened to whip them, and ordered them back to defendant's house. This seemed to anger defendant, who went down towards the tobacco patch, climbed two

fences and soon got in a quarrel with deceased. As to what occurred during the fatal difficulty, defendant stated to James Chestnut and J. S. Griffith that the devil had got into him (defendant) and had been for a week; that he got mad because deceased had threatened to whip his (defendant's) boy for dogging some cattle; and that he went down to the tobacco patch intending to stomp deceased into the earth; that he told deceased what he thought of him, and deceased came at defendant with a hoe. That after deceased struck defendant with the hoe, defendant drew his knife and deceased drew his knife. Then both agreed to put up their knives, and had a fight, first one on top and then the other. That deceased agreed to quit if defendant would let him up. That defendant did so, and deceased got up, walked off a short distance and fell. Mr. Chestnut further testified that defendant said that when he first drew his knife, he thought he would rip deceased's guts out, and then he concluded he would not. Shortly after the cutting, defendant's wife and others came, arriving at the tobacco patch about the time of the death of deceased. The body was found some twelve steps from the fence; and the blood on the ground and the condition of the ground indicated that there had been a struggle there. There were three wounds on deceased; two were on his arm, and the other on his left breast.

The evidence for the defendant tended to show that he and deceased were not on friendly terms; that they had had frequent quarrels and fights. That deceased, who was a member of the Holiness church, and quite religiously inclined, tried to impose on defendant and tried to boss defendant's children. That deceased had often threatened defendant and on two different occasions outsiders had to intervene and prevent deceased from injuring defendant. There was also evidence to the effect that deceased was a man of bad reputation, so far as peace and order were concerned.

The defendant testified that he was at his house when he discovered Chestnut's cattle come up to this fence, so he sent his children with a pup down there to run them off. The children soon returned, saying that deceased would not let them run the cattle and threatened to whip them. That defendant thought he would go down there and reason with deceased; so he climbed upon the fence and asked deceased who gave him authority to do that. That deceased replied that no one did, he took it on himself, and that he would whip the children if he ever caught them out in the lane. That one word brought on another till deceased started at defendant with a hoe. The defendant told deceased that he (defendant) was not afraid of deceased, although deceased had run over and abused him. That he asked deceased to put down the hoe and have a fair fight, which deceased did. That deceased then got out his knife, and defendant told him to put up his knife, and have a fair fight. Deceased did so, but picked up the hoe again, and defendant got excited, drew his knife and started at deceased. That in the scuffle that followed deceased struck defendant with the hoe, and defendant struck deceased three times with the knife. Deceased called for help and defendant agreed to let him up if he (deceased) would go away and quit. Deceased got up, walked off a little way and sank down. Defendant then picked up deceased and called for help, and defendant's wife soon came. An examination was made of the clothes worn by deceased, and a pocket-knife and sack of tobacco were found in his pocket.

In rebuttal, the State's evidence tended to show that the deceased enjoyed a good reputation as a peaceable man; and that the reputation for veracity of Thomas Willis, one of defendant's witnesses, was not good.

At the close of the evidence the court instructed the jury upon murder of the second degree and manslaugh-

ter of the fourth degree. Upon the cause being submitted to the jury they returned a verdict of guilty of manslaughter in the fourth degree, but failed to agree upon the punishment to be assessed, whereupon the court, in pursuance to the provisions of the statute authorizing it to assess the punishment, upon the failure of the jury so to do, assessed defendant's punishment at imprisonment in the penitentiary for a term of two years. Motion for new trial was timely filed and by the court overruled. Sentence and judgment were entered in accordance with the verdict and the assessment of punishment by the court, and from this judgment defendant prosecuted his appeal to this court and the record is now before us for consideration.

### OPINION.

The record in this cause discloses three legal propositions for consideration:

1. It is insisted that the testimony of Rev. James Chestnut, who testified to statements made to him by the defendant, were inadmissible under the provisions of the statute which render incompetent any minister of the gospel or priest of any denomination, concerning a confession made to him in his professional character, in the course of discipline enjoined by the rules of practice of such denomination.

2. That the court erroneously declared the law upon the facts developed at the trial.

3. That the information is insufficient to support the verdict and judgment in this cause.

I. Upon the first proposition it is sufficient to say that we have carefully read the testimony of the minister, Mr. Chestnut, and it is manifest that the statements of the defendant, about which he gave testimony, do not fall within the provisions of the section of the statute relied upon by appellant. While it may be said that the witness was a minister and preached in the community

where the alleged crime was committed, there is an entire absence of any showing in the record that the defendant even belonged to the same religious denomination that the minister did, or that the defendant belonged to any religious denomination. There is nothing appearing in the testimony of this minister that the statements made to him by the defendant were made to the minister in his professional character, nor in the course of any discipline enjoined by the rules of practice of the denomination to which the minister belonged, or to any other denomination. The terms of the statute make manifest the only rule which can be applied to statements of the character now under discussion. It is expressly provided that, in order to make statements to a minister of the gospel or priest of any denomination inadmissible, such statements must be made to such minister or priest in his professsional character in the course of discipline enjoined by the rules of practice of such denomination. Mr. Wharton in his Law of Evidence, in speaking of a statute similar to section 4659, Revised Statutes 1899, thus lays down the rule: "Under these statutes, however, a communication, to be privileged, must be made by a penitent as an enjoined religious discipline to a priest, and do not cover a confession made to a clergyman not in the course of such discipline." [1 Whar. Law of Ev. (3 Ed.), sec. 597.]

In the case of Knight v. Lee, 80 Ind. l. c. 203, under a statute of that State, which in all essential particulars is like the statute of this State, the Supreme Court of Indiana, in discussing this statute, said: "The confessions, concerning which clergymen are incompetent to testify, are, evidently, such as are penitential in their character, or as are made to clergymen in obedience to some supposed religious duty or obligation. and do not embrace communications to clergymen, however confidential, when not made in connection with or in discharge of some such supposed religious duty or obligation; or when made to them while in the dis-

charge of duties other than those which pertain to the office of a clergyman. We are, therefore, of the opinion that the court did not err in permitting Bryant to testify, as he did, over the objection of the defendant.'' To the same effect is Gillooley v. State, 58 Ind. 182. It was expressly ruled in that case that statements made to a minister not concerning any confession made to him in the course of discipline enjoined by the church, were not inadmissible on the simple ground that the· statements were made to a minister. The rule as to evidence of this character is also clearly stated in 4 Wigmore on Evidence, sec. 2395, which is fully in accord with the doctrine as herein indicated, announced by other authorities.

We see no necessity for pursuing this subject further, for if the terms of the statute are to be construed to mean what they say, then that the testimony of Mr. Chestnut in this case does not fall within the inhibition of the provisions of that statute, is too clear for discussion.

II. It is next complained that the court erroneously declared the law upon the facts developed at the trial. Under the well-settled rules of practice, as has frequently been announced by this court, in order to warrant this court in reviewing an assignment of error, the error complained of must be properly preserved by timely objections and exceptions to the action of the court upon the subject before it. The record before us in this case discloses an entire absence of any objections or exceptions to the giving or refusing of declarations of law, hence following the rule as has been repeatedly announced by this court upon that question, the errors complained of in respect to the declarations of law are not before us for review.

III. This leads us to the consideration of the only remaining proposition, that is, as to the sufficiency of the information to support the verdict and judgment.

It is sufficient to say upon this proposition that while this information does·not conform to the legal requirements announced in State v. Dawson, 187 Mo. 60, and State v. Coleman, 186 Mo. l. c. 164, in charging murder in the first degree, for the reason that it omits in the closing part of the information to charge that it was upon the oath of the prosecuting officer, which was deemed essential in cases of information for murder, in the cases above cited; however, in those same cases it was expressly ruled that even with that omission the information or indictment would be sufficient to charge manslaughter.

We have indicated substantially the facts developed at the trial, and the cause was properly submitted to the jury upon the facts. There is ample testimony to support the finding and verdict of the jury, and finding no reversible error the judgment of the trial court should be affirmed, and it is so ordered.

All concur.