<div style="margin-left:2em">Numerous Subjects:<br/>One Instruction.</div>

of innocense of defendant, the effect of the finding of the indictment and reasonable doubt. These subjects were sufficiently covered by instruction five, given by the court. There is no merit in defendant's contention that the jury was not sufficiently and clearly directed upon these subjects, because they were covered in a single instruction. A separate paragraph was devoted to each subject and they were not commingled in such manner as to be obscure or likely to escape the notice of the jury. It results that this assignment must be overruled.

IV. Finding no reversible error in the matters specifically pointed out in appellant's brief and the information, verdict and judgment being found to be in

Conclusion.

approved and proper form, it becomes our duty to affirm the judgment and it is so ordered. *White, J.,* concurs; *Walker, J.,* absent.

## THE STATE v. RUPERT RENNISON and CHARLES RENNISON, Appellants.

### Division Two, December 31, 1924.

1. **INFORMATION: Murder: Omitting Conclusion: Charges Only Manslaughter.** An information or indictment from which is omitted a formal conclusion charges only manslaughter, although it may otherwise attempt to charge murder. It is the proper conclusion of an indictment or information for murder that marks the feature of the offense which distinguishes it from manslaughter. And if the instrument contains no proper conclusion, or none at all, the instructions should relate only to manslaughter, and none for a higher grade of the offense be given.

2. ——: ——: ——: **Amendment.** Defendants having been charged by information filed in the county in which the crime was committed, and convicted of murder in another county to which the case was taken by change of venue, and upon their appeal the in-

formation is held to charge only manslaughter because it contains no formal conclusion, the prosecuting attorney of the county in which the crime was committed is authorized by statute (Sec. 3853, R. S. 1919) to amend the information so as to include a proper conclusion.

3. **INSTRUCTIONS: Manslaughter: Heat of Passion: Reasonable Provocation.** Defendants are entitled to an instruction on manslaughter where there is evidence for them tending to prove that they acted upon a sudden heat of passion engendered by reasonable provocation; for, in such circumstances, the existence of malice is negatived, and the killing though intentional, is manslaughter.

4. ——: ——: **In Defense of Father: Imperfect Self-Defense.** Where the evidence tends to prove that deceased made a violent and unprovoked assault upon one of the defendants and that, under the influence of the passion thus engendered, his son, the other defendant, went to the father's rescue and shot and killed the assailant, the instruction for the son should not be restricted to involuntary homicide; but there being evidence for defendants tending to prove that they acted upon a sudden heat of passion engendered by reasonable provocation, both are entitled to a proper instruction on manslaughter, and both are entitled to an instruction on the right of imperfect self-defense.

5. ——: **Self-Defense: Right of Attack.** Where the evidence tends to prove that deceased made a violent and unprovoked assault upon one of the defendants and that the other, under the influence of the passion thus engendered, went to the rescue of his assaulted father and shot and killed the assailant, an instruction that "the right of self-defense does not imply the right of attack, and it will not avail in any case where the difficulty is sought for and induced by the party by any wilful act of his or where he voluntarily and of his own free will enters into it, no matter how imminent the peril may become during the progress of the affray" unreasonably restricts the right of self-defense. The right to defend against an assault may imply the right of attack.

6. **EVIDENCE: Exhibition of Deceased's Clothes.** There being no question about the identity of deceased, the location of the wounds or that one of the defendants fired the fatal shots, it is error to permit the State to exhibit to the jury the bloody clothing of deceased.

7. **ACCESSORY: Charged as Principal.** An accessory before the fact should be informed against as a principal, and the information in

this case conforms to the statute (Sec. 3687, R. S. 1919) in that respect.

Citations to Headnotes: 1, Homicide, 30 C. J. par. 314; 2, Indictment and Informations, 31 C. J. par. 456 (1926 Anno); 3, Homicide, 29 C. J. par. 114 and 30 C. J. par. 653; 4 and 5, Homicide, 30 C. J. pars. 260, 627, 636, 654, 621; 6 and 7, Criminal Law, 16 C. J. pars. 1226, 103.

Appeal from Lafayette Circuit Court.—*Hon. Robert M. Reynolds,* Judge.

REVERSED AND REMANDED.

*W. D. Steele, W. H. Meschede, A. L. Shortridge, W. V. Draffen, Aull & Aull* and *D. E. Kennedy* for appellants.

(1) Instruction 8 given on behalf of the State is erroneous and prejudicial, for the reason that it is in conflict with Sec. 3233, R. S. 1919, in that it assumes that Rupert Rennison had no right to interfere when Jobe assaulted his father. State v. Hickam, 95 Mo. 322; State v. Turner, 246 Mo. 598; State v. Sinclair, 250 Mo. 278. (2) Instruction 8 is erroneous for the reason that it is unreasonable and improperly restricted defendant Rupert Rennison's right of self-defense; and further that it attempts to limit defendant's right of self-defense by erroneously attempting to define the right of attack. State v. Mathews, 148 Mo. 185; State v. Goodwin, 271 Mo. 73; State v. Partlow, 90 Mo. 608; State v. Bartlett, 170 Mo. 658; State v. Gordon, 191 Mo. 114; State v. Rapp, 142 Mo. 443; State v. Banks, 258 Mo. 479, State v. Hollingsworth, 156 Mo. 178; State v. Hopkins, 280 Mo. 388; State v. Roberts, 280 Mo. 669; State v. Creed, 299 Mo. 307. (3) The court erred in failing to instruct the jury on defendant Rupert Rennison's imperfect right of self-defense, based on the testimony on behalf of defendants. State v. Creed, 299 Mo. 307; State v. Kretschner, 232 Mo. 29; State v. Gordon, 191 Mo. 114; State v. Patterson, 159 Mo. 560; State v. Mathews, 148 Mo. 185; State v. Partlow, 90 Mo. 608. (4) The court

erred in permitting the State, over the objections of the defendants, to exhibit the clothing worn by the deceased at the time of his death. State v. McAfee, 248 Mo. 379; State v. Porter, 276 Mo. 396; State v. Creed, 299 Mo. 307. (5) The court erred in not defining "heat of passion," "reasonable provocation," "lawful provoca- tion." State v. Corwin, 266 Mo. 90; State v. Skaggs, 159 Mo. 581; State v. Reed, 154 Mo. 129; State v. Strong, 153 Mo. 555.

*Jesse W. Barrett,* Attorney-General, and *William L. Vandeventer,* Special Assistant Attorney-General, for respondent.

(1) An erroneous instruction on manslaughter is not error where defendant was convicted of murder in second degree, where there was no manslaughter in the case. State v. Baker, 246 Mo. 375; State v. Privitt, 175 Mo. 231; State v. Dunn, 80 Mo. 681, 693; State v. Snead, 259 Mo. 432. Where defendant is entitled to a manslaughter instruction it must be correct. State v. Little, 228 Mo. 273. (2) An instruction on man- slaughter was necessary. Injury to a relative in the presence of accused may constitute adequate provoca- tion. 29 Corpus Juris, Homicide, sec. 124; Alexander v. State, 118 Ga. 26; State v. Turner, 246 Mo. 598, 611. (3) Rupert Rennison was entitled to an instruction on the right of self-defense in protecting his father State v. Turner, 246 Mo. 598, 610; State v. Eastham, 240 Mo. 241; State v. Foley, 12 Mo. App. 431; State v. Burns, 278 Mo. 441. (4) Defendant was entitled to an instruc- tion on the imperfect right of self-defense. State v. Creed, 252 S. W. 678. (5) The bloody clothing worn by deceased at the time of his death was improperly admitted in evidence. State v. Creed, 299 Mo. 307; State v. Porter, 276 Mo. 396. (6) Instruction 8 was erroneous in that it told the jury that: "the right of self-defense does not imply the right of attack." State v. Ball, 262 S. W. 1045.

HIGBEE, C.—On September 18, 1922, the Prosecuting Attorney of Saline County filed an information in the circuit court of said county, charging that "one Rupert Rennison and Charles Rennison, on the 21st day of May, 1922, at said County of Saline, in the State of. Missouri, did, then and there unlawfully, in and upon one William Jobe, then and there being, feloniously, wilfully, deliberately, premeditatedly and of their malice aforethought, make an assault, and with a deadly weapon, to-wit, a pistol, then and there loaded with gun powder and leaden balls, which the said Rupert Rennison then and there had and held, did then and there feloniously, on purpose and of their malice aforethought, wilfully, deliberately and premeditatedly shoot and strike him, the said William Jobe, then and there with the deadly weapon, to-wit, the pistol aforesaid and the gun powder and leaden balls aforesaid, giving to him, the said William Jobe, one mortal wound of which said mortal wound the said William Jobe then and there died, against the peace and dignity of the State."

This was signed and duly verified by the prosecuting attorney. A change of venue was thereafter awarded to the Circuit Court of Lafayette County, and the case was tried at the April term, 1923, of said court. The jury found each of the defendants guilty of murder in the second degree, and assessed the punishment of Charles Rennison at ten years' imprisonment in the penitentiary and that of Rupert Rennison at twenty years. After motions for new trial and in arrest were overruled, the defendants were duly sentenced and appealed therefrom.

The evidence for the State tends to prove that William Jobe, a brother of Charles Rennison's wife, and C. C. Campbell went to the residence of appellants in the south part of Saline County, on Sunday, May 21, 1922, arriving there at about noon. Appellants were not at home. Jobe and Campbell ate dinner with the family, and about the time the meal was finished Charles

Rennison and his son Rupert and Frank York drove up in the Rennison automobile and stopped in the public road. Appellants and York went to the barn, and Jobe and Campbell went out to the automobile. Ed. Rennison, another son of Charles Rennison, came to the car and was introduced to Campbell by Mr. Jobe. At this time the appellants were sitting in the doorway of the barn, a hundred feet or more distant from the automobile. Rupert called to Mr. Jobe to come to the barn; called him twice, and, accordingly, Jobe went to the barn Rupert said to Jobe: "You have my still." Jobe said he had not. Rupert "told him he knowed he had it up there in the upstairs of his house and Jobe said he didn't, to go and see for himself." Rupert called Jobe vile names and struck at him three times. Jobe stepped back, saying there was no use in having any trouble. Charles Rennison then struck several blows at Jobe and Jobe knocked him down. Charles Rennison said to Rupert, "Put it to the s— o— b—; shoot him." Thereupon Rupert shot Jobe twice in quick succession. Jobe went into the barn, where he was found dead, lying on the floor. He was forty-seven years of age. There were two gun-shot wounds, one near the left nipple, the other four or five inches below it.

The evidence for the defense, as summarized in the statement and brief of the Attorney-General, is: "The evidence for the appellants tended to show that they did not invite the deceased to come up to the barn; that he came up there of his own volition, started the trouble himself, knocked Charley Rennison down and was standing over him with a drawn revolver, kicking him; that Rupert Rennison asked him to desist, whereupon, deceased fired a shot at Rupert Rennison, who immediately shot deceased twice, which shots resulted in his death; that the shots of Rupert Rennison were fired in self-defense."

The sufficiency of the information is challenged by the motions in arrest.

I.   It has been uniformly held in this State that it is the formal conclusion of an indictment or information

**Information:**
**No Conclusion.**

for murder that distinguishes it from manslaughter. In State v. Dawson, 187 Mo. 60, 64, 85 S. W. 526, Judge BURGESS, speaking for the court, in Banc, said:

"The first point presented for our consideration on this appeal is with respect to the sufficiency of the information, which defendant claims is bad because it does not conclude as required in case of homicide prosecuted by indictment.  The information concludes as follows: 'And so the said James P. Boyd, prosecuting attorney of and within and for the County of Monroe and State of Missouri as aforesaid, does inform the court aforesaid, that he the said Frank Dawson, her, the said Anna Hartman, in the manner and by the means aforesaid, feloniously, wilfully, premediatedly, deliberately, on purpose and of his malice aforethought, at and in the said County of Monroe and State of Missouri, on the said fourth day of December A. D. 1903, did kill and murder, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State,' but omits to allege that the said James P. Boyd, prosecuting attorney of and within and for the County of Monroe and State of Missouri as aforesaid, 'upon his oath aforesaid,' does inform the court aforesaid, etc.

"The contention is that the crime charged in the information is nothing more than manslaughter.  In the case of State v. Meyers, 99 Mo. 107, it is held that the conclusion of a count of an indictment for murder is just as essential as other portions of the count, and the concluding charge in such case should be by the grand jurors upon their oaths; otherwise, the previous words of the indictment will charge only manslaughter.

"The same rule is announced in State v. Furgerson, 152 Mo. 92;  State v. Sanders, 158 Mo. 610.

"In State v. Cook and Frogge, 170 Mo. 210. GANTT, J., speaking for the court, said:

" 'The indictment is not sufficient to sustain a conviction of murder. The indictment only charges manslaughter. As was ruled in State v. Sanders, 158 Mo. l. c. 612, an indictment under our Constitution means just what it did at common law. [Ex parte Slater, 72 Mo. 102; State v. Meyers, 99 Mo. 116.] At common law it was essential to an indictment for murder that it should state, "and so the grand jurors, or jurors, aforesaid, upon their oath," do say, etc. [Heydon's Case, 4 Coke, 41 b; 3 Chitty's Crim. Law, 750; Wharton's Homicide, sec. 49.] And an indictment for murder without these words is fatally defective. [State v. Furgerson, 152 Mo. 98.]'

"If, as we have said, an indictment for murder at common law was not good unless it concluded as we have intimated, there can be no reason why the same rule should not apply to the prosecutions for murder by information, for, if, as said in the Meyers case, the proper conclusion of an indictment for murder marks the feature of the offense which distinguishes it from manslaughter, the same distinguishing feature clearly applies to both indictments and informations for murder. [State v. Coleman, 186 Mo. 151, and State v. Atchley, 186 Mo. 174.]''

BRACE, C. J., MARSHALL, GANTT, VALLIANT, FOX and LAMM, JJ., concurred in this opinion. State v. Dawson was cited and approved in State v. Morgan, 196 Mo. 177, 95 S. W. 402. In State v. Cline, 264 Mo. 416, 418, 175 S. W. 184, the court said:

"It is contended by appellant that the information is defective in that the conclusion of the information fails to state the name of the person murdered. The portion of the information thus attacked is as follows: 'And so the prosecuting attorney aforesaid, upon his official oath aforesaid, doth say, that the said Willis Cline, at the county and state aforesaid, in the manner

and by the means aforesaid, feloniously, wilfully, deliberately, premeditatedly, on purpose and of his malice aforethought did kill and murder; against the peace and dignity of the State.' The common-law form of indictment for murder requires that the name of the person murdered be stated in the conclusion of the indictment. [State v. Meyers, 99 Mo. 107, l. c. 115, and authorities therein cited.] 'At common law great strictness and technical accuracy was exacted as to the conclusion of the indictment for murder.' [21 Cyc. 858.] The reason for this, no doubt, was that, 'All the authorities show the proper conclusion of an indictment for murder marks the feature of that offense which distinguishes it from manslaughter. [State v. Meyers, supra.] Absent a constitutional provision or proper legislative enactment prescribing or permitting a different form, the forms of indictments for murder in this State are to be measured by the rules of the common law in that behalf prescribed. [State v. Sanders, 158 Mo. 610, l. c. 612; State v. Cook, 170 Mo. 210, l. c. 214.] And the rules of the common law concerning indictments for murder are also applicable to informations charging murder. [State v. Dawson, 187 Mo. 60, l. c. 65-6; State v. Minor, 193 Mo. 597.] The only statutory enactment which might be claimed to cure the defect here shown is Section 5115, Revised Statutes 1909, commonly known as the Statute of Joefails, applicable to pleadings in criminal cases. Yet in passing upon the identical point here involved it has been held that the above-mentioned defect is not cured by said statute, but that the indictment by reason of such a defect is fatally defective. [State v. Pemberton, 30 Mo. 376, l. c. 378-9.]' "

In State v. Lee, 303 Mo. 246, the formal conclusion of the information, which charged murder in the first degree, was substantially the same as the conclusion to the information in State v. Dawson, supra; that is, it omitted the words, "upon his oath aforesaid." The

306 Mo.—31

information was signed and verified by the prosecuting attorney in conformity with the requirements of Section 3849, Revised Statutes 1919. Judge WHITE said, at page 258: "That statute made it necessary to verify an information, not a common-law verification, but a statutory one. It would not have to follow any common-law rule in respect to more formal parts."

In the instant case the proper conclusion to the information is omitted in its entirety. We must therefore hold, in conformity to the foregoing rulings of this court, that the information simply charges the defendants with manslaughter, and instructions should not have been given on any higher grade of offense. However, the information may be amended by the Prosecuting Attorney of Saline County, as provided by Section 3853, Revised Statutes 1919. See State v. Dixon, 253 S. W. 746, 747, overruling State v. Bartlett, 170 Mo. 658, 71 S. W. 148, on this point.

II.   The defendants were entitled to an instruction on manslaughter. There was evidence for the defendants tending to prove that they acted upon sudden heat of passion engendered by reasonable provocation. In Manslaughter. such circumstances, the existence of malice will be negatived and the killing, though intentional, will be manslaughter. [State v. Burrell, 252 S. W. 709, 711; State v. Connor, 252 S. W. 713, 718; State v. Conley, 255 Mo. 185, 198, 164 S. W. 193.] No instruction on manslaughter was given for Charles Rennison, and that given for Rupert was erroneous in that it was restricted to involuntary homicide. The evidence tended to prove that deceased made a violent, unprovoked assault upon Charles Rennison and that, under the influence of the passion thus engendered, Rupert went to the rescue of his father and shot the assailant down. In State v. Turner, 246 Mo. 598, 611, 152 S. W. 313, BLAIR, C., quoted from Wharton on Homicide, Section 183:

"To mitigate a homicide it is not necessary that the assault or other provocation should have been made upon, or given to, the slayer; an assault upon a near relative may serve as an adequate provocation to reduce killing the assailant to manslaughter, as well as an assault upon the slayer. . . . Nor would the shooting of a person be anything more than manslaughter where it was done in a moment of passion aroused by an assault upon, and wrongful treatment of, the brother of the slayer.''

See also 29 Corpus Juris, page 1141, and cases cited.

The learned Attorney-General, with commendable frankness, confesses error on this and other questions raised on the appeal. On a re-trial of this case, Rupert Rennison will be entitled to an instruction on his right to defend his father, if the evidence should be of the character it was on the former trial. [State v. Turner, supra, p. 610.] The defendants will also be entitled to an instruction on the right of imperfect self-defense. [State v. Creed, 299 Mo. 307, 319, 252 S. W. 678.]

III. Instruction numbered 8, for the State, reads in part:

"The right of self-defense does not imply the right of attack, and it will not avail in any case where the difficulty is sought for and induced by the party by any wilful act of his or where he voluntarily and of his own free will enters into it, no matter how imminent the peril may become during the progress of the affray.''

Self-Defense.

This instruction unreasonably restricts the right of self-defense. The right to defend against an assault may imply the right of attack. This question is considered and authorities reviewed in State v. Ball, 262 S. W. 1043, 1045.

IV. At the trial the State was permitted to introduce and exhibit to the jury the bloody clothing of the

deceased, over the objections of the defendants. There was no question about the identity of the deceased, the location of the wounds or that Rupert Rennison fired the fatal shots. "The only effect of the exhibition of the clothing was to inflame the jury." This was error. [State v. Creed, supra, 317.]

**Exhibition of Clothes.**

V. Appellants insist that Charles Rennison was not informed against or prosecuted as an accessory before the fact, and that the conviction as to him should be reversed and he should be discharged. Section 3687, Revised Statutes 1919, provides that an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried and convicted and punished in the same manner as the principal in the first degree. The information is in conformity to the statute in this respect and is sufficient. [State v. Roderman, 248 S. W. 964.]

**Accessory.**

Other errors are complained of but they need not be considered as they are not likely to occur on a retrial of the case. The judgment is reversed and the cause remanded. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is hereby adopted as the opinion of the court. All of the judges concur, except *Walker, J.,* absent.