## EX PARTE ARTIE KEET.

### Court en Banc, August 6, 1926.

**1.  INFORMATION: Murder in Second Degree: Manslaughter: Discharge.** If the information charges only manslaughter, a defendant cannot be convicted thereunder of murder in the second degree; and if the verdict and judgment adjudge him guilty of murder in the second degree and he is committed and confined in the penitentiary under such judgment he is entitled to his discharge upon **habeas corpus.**

**2.  ——: ——: Sufficient in Substance.**   An information charging that the accused, with a revolving pistol, loaded with gunpowder and leaden balls, feloniously, on purpose and of her malice aforethought, wilfully and premeditatedly, shot and killed a named person, charges murder in the second degree, and embraces every element of that crime, and does not charge manslaughter only, but serves every purpose of a pleading according to the principles of the common law, and satisfies constitutional requirements as well.

**3.  ——: ——: Formal Conclusion.**   An information, which in its charging parts embraces and charges every element of murder in the second degree, is not defective because the charge is not followed by a formal conclusion, nor does the omission of a formal conclusion reduce the crime to manslaughter.   The formal conclusion formerly appended to an indictment charging murder embodies a conclusion of law, and nothing more, and according to all the rules of pleading, applicable alike to both criminal and civil actions, the pleading of a mere legal conclusion is a futile thing, and neither alone, nor in connection with other sufficient and necessary averments, does it serve any of the purposes of a pleading.   No indictment or information which charges every element of the crime denounced by the statute is rendered defective by an omission therefrom of a formal legal conclusion, nor is such formal conclusion required by the statutes or by the Constitution, although an indictment, in so far as its substance is concerned, means just what it did at common law. [Refusing to follow State v. Meyers, 99 Mo. 107; State v. Furgerson, 152 Mo. 92; State v. Sanders, 158 Mo. 610; State v. Cook, 170 Mo. 210.]

---

Corpus Juris-Cyc. References: **Habeas Corpus,** 29 C. J., Section 34, p. 44, n. 43.  **Homicide,** 30 C. J., Section 312, p. 116, n. 43; Section 314, p. 117, n. 66; p. 118, n. 76; Section 676, p. 428, n. 18.

*Habeas Corpus.*

PETITIONER REMANDED.

*Allen & Allen* for petitioner.

*North Todd Gentry,* Attorney-General, for respondent.

RAGLAND, J.—On a trial by jury in the Criminal Court of Greene County, the petitioner was, on the 7th day of August, 1919, found guilty of murder in the second degree, and her punishment assessed at imprisonment in the State Penitentiary for a term of ten years. Subsequently, on August 11, 1919, sentence and judgment in accordance with the verdict were formally pronounced, and thereafter, at the same term of court, she was allowed an appeal to this court and admitted to bail pending the appeal. She having thereafter taken no steps to perfect her appeal the same was dismissed by this court, on motion of the Attorney-General, on the 4th day of October, 1923. Thereafter she was taken into custody and conveyed to the State Penitentiary, on the 12th day of December, 1923, where she is now confined pursuant to the sentence and judgment of the Criminal Court of Greene County.

The information upon which the petitioner was tried and convicted, omitting formal parts, was as follows:

"O. J. Page, Prosecuting Attorney within and for the County of Greene, in the State of Missouri, under his oath of office informs the court that Artie Keet, late of the county and state aforesaid, on the 8th day of June A. D. 1919, at the County of Greene and State of Missouri, in and upon one Minor Keet, then and there being, feloniously, wilfully, premeditatedly and of her malice aforethought, did make an assault, and with a dangerous and deadly weapon, to-wit, a revolving pistol and then and there loaded with gunpowder and leaden balls, which she, the said Artie Keet, in both her hands then and there had and held at and against him, the said Minor Keet, then and there feloniously, on purpose and of her malice aforethought, wilfully and premeditatedly, did shoot off and discharge, and with the revolving pistol aforesaid, and the leaden balls aforesaid, then and there feloniously, on purpose and of her malice aforethought wilfully, premeditatedly, did shoot and strike him, the said Minor Keet, in and upon the abdomen and bowels, the said Artie Keet giving to him, the said Minor Keet, then and there with a dangerous and deadly weapon aforesaid, the revolving pistol aforesaid and the leaden balls aforesaid, in and upon the abdomen and bowels of the said Minor Keet, one mortal wound of the breadth of one inch and of the depth of twelve inches, of which mortal wound the said Minor

Keet then and there instantly died; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State.''

It is the contention of the petitioner that the information of which the foregoing is a copy charged nothing more than manslaughter; consequently, she was convicted of, and is now undergoing imprisonment for, a crime with which she was never charged. If the contention is sound her imprisonment is illegal. [29 C. J. 44.]

A critical examination of the pleading discloses that it embraces within its allegations every element of murder in the second degree, it alleges in direct and unequivocal language that the accused killed the deceased, the manner in which and the means by which she killed him, and the intent with which she was actuated in the doing of the acts which pertained to and constituted the killing. As a charge of the commission of murder in the second degree, the information describes the offense with such certainty, that the accused was bound to know what she was called upon to answer and the court and jury the issue they were to try—and that a conviction or acquittal could be pleaded in bar of a subsequent prosecution. It therefore served every purpose of such a pleading according to common-law principles, and satisfied constitutional requirements as well. [Secs. 22 and 23, Art. II, Missouri Constitution.] The specific defect in the information as one for murder, it is claimed, is its failure to have appended to it the formal conclusion found in ancient precedents of common-law indictments for murder. According to those precedents it should have ended thus: ''And so the prosecuting attorney aforesaid, upon his official oath aforesaid, does say, that the said Artie Keet him, the said Minor Keet, in manner and form aforesaid, and by the means aforesaid, did feloniously, wilfully premeditatedly and of her malice aforethought, kill and murder.'' etc. [State v. Rector, 126 Mo. l. c. 341.] This language embodies a conclusion of law, and nothing more. Neither alone, nor in connection with the other averments of the information, would it have served any of the purposes of a pleading. According to all the rules of pleading, applicable alike to both criminal and civil actions, the pleading of a mere legal conclusion is a futile thing. The requirement, if there be one, that an indictment or information for murder must so conclude, is a legal solecism.

In 30 Corpus Juris, 117, it is stated: ''At common law great strictness and technical accuracy was exacted as to the conclusion of an indictment for murder, and in some states it is still held that the conclusion of an indictment for murder distinguishes it from an indictment for manslaughter, the previous words without the conclusion being insufficient to charge murder.'' The authorities in support of the text consist almost exclusively of cases decided by this

court. The leading one is State v. Meyers, 99 Mo. 107. In that case the indictment concluded as follows: "And, so said Charles Meyers and John Bogard, in manner and form aforesaid, and by the means aforesaid, did feloniously, wilfully, deliberately, premeditatedly and of their malice aforethought kill and murder the said James Weir, against the peace and dignity of the State." It was held insufficient because of the omission of the words, "the grand jurors aforesaid, upon their oath aforesaid, do say." The reasoning of the opinion takes for its major premise the proposition: "An indictment (as the term is used in the Constitution) means just what it did at common law;" it then searches Coke, Chitty, Blackstone and East's Pleas of the Crown for precedents of common-law indictments for murder. The one in Heydon's case, as reported by Coke, it seems to regard as a model. It was drawn in Latin and in the beginning of the formal conclusion are found the words: *"Et sic juratores praed' dic' super sacram' suum quod praedictus."* In State v. Furgerson, 152 Mo. 92; State v. Sanders, 158 Mo. 610; and State v. Cook, 170 Mo. 210, indictments for murder were held bad because in the commencement of the formal conclusion, "And so the grand jurors aforesaid, upon their oath aforesaid," the words, "upon their oath aforesaid;" were omitted. Besides the cases just mentioned there are numerous others, which for lack of time we do not collate and cite, which hold indictments insufficient because some one or more of the magical words of the formal conclusion were left out.

In State v. Meyers, supra, l. c. 116, it is said: "The Legislature may change it (an indictment for murder) in form, but cannot change the substance of its material averments, without impinging upon constitutional guarantees;" it is then said that the formal conclusion of a common-law indictment for murder is a matter of substance, the omission of which is not cured by our Statute of Jeofails. The question of the materiality of those averments was so completely disposed of contrary to that holding by the Supreme Court of Arkansas in Anderson v. The State, 5 Ark. 444, decided nearly a hundred years ago, that it will bear quoting from at length:

"Having thus disposed of this point, and adjudged the indictment sufficient, the question is next raised, whether it is an indictment for murder, or manslaughter only? The first count alleges that the homicide was committed *feloniously, wilfully,* and of *malice aforethought,* but in the conclusion omits the word *murder.* The second count charges the killing to have been done *wilfully and wickedly,* and in the conclusion alleges the defendant did *kill and murder.* The omission of the word 'murder' in the first count, and of the words 'of his malice aforethought' in the second count, it is suggested, are so necessary that without them the indictment will be deemed to be for manslaughter only, and this was undoubtedly so

by the English law. They were technical words of art, so accurately descriptive of the offense, that nothing else would be received in their stead as conveying the same legal idea. [Dyer 261. Bac. Abr., title, Indictment, G.] Originally all homicides were indiscriminately entitled to clergy, notwithstanding the difference in atrocity. By various statutes of Parliament passed for that purpose, the benefit of clergy was withdrawn from the more heinous degrees of guilt, and finally abolished entirely. The use of these words as descriptive of the offense of murder, arose out of the fact that they had been so used in the statutes, which took away clergy from that offence, and thus became appropriately adopted by the judges as necessary words of art, conveying a definite legal idea, to which any other words were wholly inadequate. The reason of their introduction, is thus to be traced in the history of legislation upon the subject, and in the necessity which was felt by the judges in adopting, *in favorem vitae,* the technical descriptive words employed by the Legislature in ousting the offence of clergy. [Foster, 304.] And upon the substantial and lasting distinction between murder and manslaughter, the use of them was retained, not because they were sanctioned by immemorial usage, but because they were the descriptive terms employed by the statute *creating* the offence, by separating it from manslaughter, or, at least, taking away a benefit from a common-law felony under particular circumstances. In either case it was, and is yet, necessary to use the words of the statute which describe the offence, or the circumstances of aggravation, which take away the benefit or increase the punishment of it, else it will be deemed to be an offense at common law. [2 Hale, 190, Arch Cr. Pl. 57, a.] Hence the origin of the rule that the omission of those words made the indictment for manslaughter only, as it was the next lowest degree of homicide that was clergyable. The use of these words of art was not therefore an exception, but strictly in observance of the general rule, which in such cases required the offence to be described in the terms of the statute creating it, making it more penal or taking away any benefit from it. Thus the rule which it is urged reduces the offence to manslaughter, as charged in the indictment, was to some extent peculiar to the English law, and local to that country. In this State we have no common law, *as such,* deriving its force from immemorial usage and adoption. In this respect the whole body of our law derives its authority, in this State, by force of our statutes, and in this sense, all our criminal code is created and enforced by statute. We therefore hold that, upon principle, an indictment charging with requisite certainty, a killing to have been done with malice aforethought, would be valid, as containing the very terms of our statute, in defining the crime of murder. This term is surely as significant in the indictment as in the statute, and conveys to the mind all that

is meant by the term *murder,* which is nothing more than a killing with *malice aforethought.* The word *murder,* says Foster, 304, became necessary because the statute, *Phil. and Mary* used the term *wilful murder* in ousting the offence of clergy, and hence became so descriptive of the crime that it could not be omitted. The reason of the thing has no foundation here. The entire averment was in fact only a repetition of, and conclusion of law, from the facts previously stated. An indictment, omitting that averment, certainly describes the offence with such certainty that the accused knows what he is called on to answer, the court and jury the issue they are to try, and that a conviction or acquittal may be pleaded to a subsequent prosecution. However necessary therefore that word was to an indictment in England, it cannot be regarded here in any other light than as a matter 'of form not tending to the prejudice of the defendant,' which is cured by virtue of our Rev. Stat., p. 300, sec. 102.''

From the foregoing historical resumé it appears that years ago in England there was in force a statute which deprived persons guilty of "wilful murder" of the "benefit of clergy," and that in order to bring a case within the statute it was deemed necessary to use the language of the statute itself in describing the offense—a rule of criminal pleading as applicable to purely statutory crimes frequently invoked. At the same time it was necessary in indictments for murder to describe with particularity the weapon used in the killing, and to allege its value. This because the weapon was forfeited to the King, by whom it was supposed to be applied to pious uses. [3 Chitty, Crim. Law, 757; Dukes v. The State, 11 Ind. 557.] Under our law there is no more reason why an indictment for murder should rehearse the ancient formula in conclusion than that it should allege the value of the weapon with which the homicide was committed. It is a mere form, without life or substance, which we have been idolatrously following. If its omission be regarded as a "defect or imperfection," it is one "which does not tend to the prejudice of the substantial rights of the defendant upon the merits," and which therefore does not render the indictment invalid. [Sec. 3908, R. S. 1919; Anderson v. State, supra; Dukes v. State, supra; Evans v. People, 12 Mich. 28; Chase v. State, 50 Wis. 510.]

State v. Meyers, and all other cases heretofore decided by this court which hold that the formal conclusion referred to in the Meyers case is essential to a valid indictment for murder, to the extent of that holding, should no longer be followed. The writer of this opinion yields to no one in admiration of the character, learning and ability of the great judges who were members of this court at the times those cases were decided. But they were under the influence of the thought and traditions of another generation. Methods more direct and involving less of circumlocution than were then

employed are now demanded in all of the activities of life. And a court, which discharges so vital a function as the administration of justice, should in some measure keep pace with the other agencies of social endeavor. There is small danger that such tribunals will ever cease to be imbued with reasonable conservatism.

We would not be understood as departing in the least from our former rulings that in this State an indictment means just what it did at common law, *in so far as substance is concerned;* that its sufficiency is in all cases to be tested by common-law *principles.*

For the reasons herein appearing, we hold that the information called in question in this proceeding, though not a model as to grammatical construction, was sufficient to charge the crime of murder in the second degree. As its alleged invalidity in that respect is the sole ground upon which the petitioner asserts the illegality of her imprisonment, it follows that she must be remanded.

It is so ordered. All concur, except *Graves, J.,* absent.