STATE of Missouri, Respondent,

v.

Tracy Keith FRANCIES, Appellant.

No. 45375.

Supreme Court of Missouri.

Division No. 1.

Oct. 8, 1956.

Motion for Rehearing or to Transfer to
Court en Banc Denied Nov. 12, 1956.

Mark M. Hennelly, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John W. Inglish, Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Charged by indictment with murder in the second degree, the defendant, Tracy Keith Francies, was convicted of man-slaughter and his punishment fixed by the jury at imprisonment for a term of five years. He appeals from the ensuing judgment.

Defendant, a resident of St. Louis, Missouri, was married and the father of two children. He was employed at a small arms plant and also at Central Typewriter Company, which belonged to his brother and one Schenk. On October 7, 1953, he was supposed to go to work at 3:30 p. m. However, on the morning of that day he visited several bars in the vicinity of Market Street and Broadway looking for his brother-in-law. He drank several bottles of beer and by 1:30 p. m. had decided not to go to work so he took a cab to the bank and obtained $50. He returned to the area heretofore mentioned where he continued to visit various taverns and bars until about 9:30 p. m., during which time he drank a large quantity of beer. He had visited briefly with the deceased, Sylvia Walton, in the 519 Bar late in the afternoon. He next saw her in Bonnie's Tavern at about 9:30 p. m. At that time he approached her and offered her $5 to go to a room with him. She agreed and they left together.

Instead of going to a hotel room they went by bus to his brother's typewriter shop at 4139 Natural Bridge Avenue, to which defendant had a key. They went into the back room of the typewriter shop where Sylvia took off her clothing. According to defendant, he was too drunk to have intercourse and therefore they engaged in another sex practice. Thereafter Sylvia stated that she had to get back to meet a girl friend. They then argued about money and Sylvia threatened to scream unless he paid her $10. Defendant "grabbed her by the neck and put her down." She "flipped out right away." Defendant then tried to revive her and she "kind of threw up." She then started "moaning, real heavy breathing," making "an awful lot of noise." Defendant did not want the people in the apartment over the typewriter shop to hear this, so he

"had to hush her up again." To accomplish this he put his hand over her nose and her mouth. "She kept squirming—I don't know how long it was until she was still. It seemed like I held her for ages." He finally released her when she made no further sounds and at that time she did not appear to him to be breathing at all. He then opened the back door and pulled her over near the door and waited for a considerable time until some of the lights in the area were turned out. He then dragged her body outside and left it near a fence on a used car lot. Defendant then went back into the shop and mopped a portion of the floor. He gathered up all the clothing of deceased and wrapped it in a newspaper and left the building. He placed the package of clothing in an ashpit about a block and a half away and then went on to his home. The nude body of deceased was discovered early the next morning by Mrs. Jobusch who lived above the typewriter shop and the clothes were found a day later.

Most of the facts stated above are taken from two separate statements given by defendant to the police and prosecuting officials shortly after his arrest on October 30, 1953.

An autopsy was performed by Dr. John J. Connor, chief pathologist of the City of St. Louis, who testified that the cause of death was "suffocation from aspiration of blood." The principal abnormal finding from the autopsy was a small blood clot on the vocal chords and some clotted blood in the stomach, the source of which could not be accounted for. There were no hemorrhages in the soft tissue in the region of the trachea.

All of the evidence was presented by the State except the limited testimony of the defendant, outside of the hearing of the jury, relating to the issue concerning the voluntary nature of the so-called confessions.

■ Defendant has filed no brief and we must therefore examine the assignments in his motion for new trial. This motion contains 35 assignments of alleged error, but many involve the same issue and will be considered in groups.

■ The first eight assignments in the motion for new trial complain of error in the admission in evidence of the various articles of clothing found in the ashpit. An examination of the transcript discloses that no objection was made when these exhibits were offered and admitted. The defendant is not in a position to complain here of alleged errors in the admission of these exhibits in the absence of objection thereto. State v. Gaines, Mo.Sup., 261 S.W.2d 119. What we have heretofore said also applies to assignment number nine relating to the admission of Exhibit 10, a photograph of the deceased to which no objection was interposed.

■ The next two assignments relate to the testimony of Pattie Sue Presley, a barmaid employed in the 519 Bar, who saw both defendant and deceased on October 7, 1953. It is said that the court erred in permitting this witness to partially identify the deceased by reciting what she had seen in a newspaper as such was hearsay. This apparently relates to testimony of the witness that she had seen a picture of deceased in the paper and recognized it as a picture of the girl she had known as Sylvia and further learned that her last name was Walton. Evidence of the name by which a person is known is not within the rule excluding hearsay evidence. State v. Deppe, Mo. Sup., 286 S.W.2d 776. It may be, however, that to permit a witness to repeat a name learned from one specific article in the newspaper would be extending this exception too far. Assuming, without deciding, that it was improper to permit this witness to state that she learned from the paper that the last name of deceased was Walton, it is our view that since there was other evidence as to her name, any error in this regard would not have been prejudicial. Counsel for defendant asked this witness the following question: "Has the

Excise Commissioner's Office questioned you about this matter?" Defendant contended such testimony would affect the credibility of the witness and complains of the action of the trial court in sustaining an objection thereto. There is nothing to indicate that this question would have elicited relevant evidence and since no offer of proof was made to show its relevancy we cannot say that the exclusion thereof was error. State v. Dill, Mo.Sup., 282 S.W. 2d 456.

■■ Another contention appearing in the motion for new trial is that the proof, independent of defendant's confessions, failed to establish the corpus delicti and hence the court erred in admitting the confessions in evidence, and further erred in overruling the motions of defendant for a judgment of acquittal. The corpus delicti in a murder case consists of proof of the death of the person alleged to have been murdered and that such death was caused by the criminal agency of some one other than the deceased. State v. Meadows, 330 Mo. 1020, 51 S.W.2d 1033. In the instant case the fact that the dead body of the deceased was found on a used car lot in a large city, in a nude condition, and that her clothes were found in an ashpit a block away, when considered in connection with the finding of the pathologist that she died of suffocation, would seem to be sufficient to indicate that her death resulted from the criminal agency of someone. State v. Kauffman, 329 Mo. 813, 46 S.W.2d 843; State v. Stringer, 357 Mo. 978, 211 S.W.2d 925. We rule this assignment against defendant.

It is also contended that the court erred in admitting the confessions in evidence because they were said to be "the result of coercion and force, and the defendant having been held in jail past the 20 hour limit; they were hearsay and no proper foundation was laid for their introduction." At the request of the defendant the court held a preliminary hearing, outside the presence of the jury, upon this issue. The evidence presented by the State indicated that defendant was arrested at 8:45 a. m. on October 30, 1953. He signed his first confession before noon the next day. The officers testified that no threats or promises were made to defendant and that he was not questioned for any extended period of time. It is perhaps significant that defendant was permitted to talk with his wife for about two hours during the afternoon of October 30, and on the morning of October 31, when defendant made the admissions in question, his brother was present during the period of questioning. It is true that defendant testified at this hearing that he was questioned at intervals all the first day of his arrest and until 4:30 a. m. of the next day. He also stated that the officers told him he was "just being held as a material witness, and the girl had died a natural death, and I wouldn't have anything to worry about, if I would make a statement I could go home, and get everything cleared up without any embarrassment whatever." The officers denied making this statement. The first statement was taken by the police on the morning of October 31 and subsequently defendant was questioned by Mr. Bruntrager, an assistant circuit attorney, and another (more detailed) statement was signed by him.

■ While there was some conflict between the testimony of the defendant and that of the officers, we have concluded that the State, at the preliminary hearing, sustained the burden of showing that the confessions were voluntary. State v. Di Stefano, Mo.Sup., 152 S.W.2d 20. Moreover, the fact that defendant may have been held, under arrest, for more than 20 hours, without being formally charged with a criminal offense, does not render the confessions involuntary as a matter of law. State v. Lee, 361 Mo. 163, 233 S.W.2d 666. There is no merit in defendant's statement that these confessions should have been excluded because they were "hearsay and no proper foundation was laid for their introduction." We rule that the court did not err in admitting these exhibits.

A number of the assignments relate to the alleged failure of the State to properly identify the body in this case as that of Sylvia Walton. Defendant was charged in the indictment with having killed Sylvia Walton and hence it was incumbent upon the State to prove that the body in question was that of a person having that name. In this connection it may be noted that this girl had been in St. Louis only about two weeks and hence was not well known in that community. However, there is evidence in this record to the effect that this person was Sylvia Walton and there is no evidence to indicate that she was known by any other name. In connection with a similar assignment, we have heretofore ruled that evidence of the name by which a person is known is not within the rule excluding hearsay evidence. While, as we have indicated, it was necessary that proof be presented as to the identity of deceased, such was not a vital issue in this case as it appears clear from this record that the body found on the used car lot and thereafter examined by Dr. Connor was the body of the girl whom defendant admitted taking to the typewriter shop on the night in question. We conclude that there was substantial evidence from which the jury could reasonably find that the body in question was that of Sylvia Walton.

Exhibit No. 11 is the statement or confession taken, in question and answer form, by Mr. Bruntrager. Nine of the assignments in the motion relate to various portions of this exhibit. Mr. Bruntrager testified to the circumstances surrounding the taking of this confession. Thereafter, at the request of counsel for the State, he read the instrument to the jury. Complaint is made that certain notations contained in the confession were hearsay and should not have been read to the jury. One of these notations is the following recital which appears in connection with the questioning of defendant regarding the identity of deceased: "At this time Mr. Bruntrager shows Tracy Francies a picture of Sylvia Walton." Another 'related to defendant's

keys. After he had identified one of these keys as the one that would unlock the door of the typewriter shop the recital is made that "Officer Cleary has the keys and he will mark them for purposes of identification." The third recital contained a description of a demonstration by defendant upon the person of Mr. Bruntrager of the manner in which he placed his hands upon the throat, mouth and nose of Sylvia Walton.

It is true that these recitals are not statements by the defendant in answer to questions asked of him. However, they are statements as to acts that transpired in the presence of the defendant and closely relate to and explain relevant and material portions of the confession. In this situation we have concluded that when defendant signed the confession containing these recitals he adopted them as a part of his confession and hence the State was entitled to read the entire instrument to the jury. It may be here noted that there could not have been any prejudice resulting from the reading of the recital concerning the demonstration by defendant, as Mr. Bruntrager testified in detail (both on direct and cross-examination) concerning the entire subject matter thereof. While we recognize that there must be reasonable limitations upon the recitals of this nature that may be placed in a confession, we think, under the exact circumstances here presented, the instant notations were not improper or prejudicial. There is no merit in the further contention of defendant that the alleged errors aforesaid were aggravated by permitting the jury to see and read these recitals in the confession as the record discloses that, upon such objection being made, the State voluntarily caused these matters to be obliterated by having the clerk paste paper over the same before the exhibit was submitted to the jury.

Another assignment states that the answer to the following question was hearsay and should not have been read to the jury: "How long were you at Bonnie's

Tavern? A. They established the fact I was there until 9:30 approximately." While it appears that this answer is based upon hearsay, it is the statement of the defendant and he is bound by it and cannot properly urge the objection stated.

The motion also contains an assignment relating to the following question and answer in said exhibit: "The last period of time when you were holding her face and nose it seemed like an age before she stopped, before she stopped squirming and moaning? A. Yes." No objection was made to the reading of this portion of the confession and hence defendant cannot now complain of the alleged error in permitting it to be read to the jury.

Defendant in his confession attempted to detail his activities throughout the day of October 7, 1953. In so doing he disclosed that he had been looking for his brother-in-law to ask him about a couple of race horses. Also, the following statement by defendant appears in this exhibit: "Off and on, I have been going downtown in these taverns and that's all they're in for, just to take all the money they can. Q. With drinks or for a lay? A. With drinks." Defendant contends it was error to admit these portions of the confession as they were irrelevant and constituted an attempt to put the character and reputation of defendant in issue. We do not think this contention may be sustained. The first statement was defendant's explanation of his purpose in going to the taverns and bars in question, and the other evidence complained of related to the manner of operating these bars. It was a part of defendant's description of the practice of these bars to provide "B-girls" for whom customers are expected to buy drinks. Under the circumstances it cannot be said that this evidence was wholly irrelevant. It was defendant's narrative of the events which culminated, shortly thereafter, in his date with Sylvia Walton. Since this evidence was material and tended to prove the guilt of the defendant, its admission will not be considered as an attempt to attack his character or reputation.

Defendant also complains of the examination of Dr. Connor, and particularly contends that it was error to permit him to answer certain hypothetical questions propounded to him by the circuit attorney. We deem it unnecessary to extend this opinion by setting out those questions herein. The objection to each question was substantially that such questions assumed certain facts that were not in evidence, and did not include all of the facts in evidence, were based on hearsay, contained conclusions of fact, and that no proper foundation had been laid therefor. In this connection it should be noted that an examination of the objections made at the trial, and also the assignments in the motion for new trial, does not disclose the facts assumed in the questions that defendant contends were not in evidence, or the facts in evidence that were omitted, or the facts stated that were based on hearsay, or the parts of the questions that were said to be "certain conclusions." In this situation it is obvious that it is very difficult for us to determine the merit of defendant's contentions in the respects heretofore mentioned. However, we have carefully read the testimony of this witness and have considered it in the light of the defendant's contentions and have found no prejudicial error therein. It may be stated generally, in this connection, that the State may frame its hypothetical questions upon its own theory. On cross-examination defendant's counsel had the right to ask this doctor hypothetical questions based upon facts in evidence favorable to his contentions. A hypothetical question is not necessarily improper because it does not include all of the relevant facts in evidence. State v. Sapp, 356 Mo. 705, 203 S.W.2d 425.

It is apparent from what we have heretofore said that there is no merit in the assignment that the State failed to prove the necessary elements of either murder in the second degree or manslaughter and

therefore the court should have sustained the motion of defendant for a judgment of acquittal.

■ Three of the assignments in the motion merely state that the court erred in refusing to give defendant's instructions A, B, and C without specifying any reasons as to why such refusal was error. These assignments present nothing for our review. State v. Grubbs, 358 Mo. 323, 214 S.W.2d 435.

■ The contention is made that the court erred in giving Instruction No. 4 on manslaughter because it "failed to incorporate in it any of the elements or definitions of culpable negligence." The instruction required the jury to find that the defendant "did willfully, unlawfully, and intentionally assault and suffocate, with his hands, the said Sylvia Walton." There was evidence to support this submission. The theory that deceased may have died as the result of the culpable negligence of the defendant would not have been a defense but, on the contrary, would have been an additional theory under which he might have been convicted of manslaughter. Section 559.070 RSMo 1949, V.A.M.S. Assuming, without deciding, that the evidence would have supported the submission of that theory, any error in failing to instruct thereon would have been favorable to the defendant and hence he could not complain thereof.

■ It is further contended that the court erred in giving Instruction No. 6 on death by accident. It reads as follows: "'Excusable homicide', as that term is used in these instructions, means the accidental killing of another. The court instructs the jury that if you believe and find from the evidence that the defendant assaulted and suffocated Sylvia Walton, causing her death, and if you further believe and find that the said assault and suffocation of the deceased, Sylvia Walton, if so, was not intentionally done by the defendant, but was accidentally done, while he was under great mental duress, then you will acquit the de-

fendant altogether." The assignment states that "it was a comment on the evidence, did not properly define the law relative to the defense of accident, and in using the term, under great mental duress, made a comment on the evidence." The statement that the instruction is a comment on the evidence and fails to properly define the law relative to the defense of accident is too general to preserve anything for our review. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304. We may state generally, however, that because of its very general terms the instruction would seem to be more favorable to the defendant than he was entitled to. Essentially, all the jury needed to find, in order to acquit, was that the suffocation was not intentional but was accidentally done by defendant. We do not think the phrase, "While he was under great mental duress," could have been prejudicial to defendant. It was undoubtedly inserted in the instruction because of the statements in defendant's confession that Sylvia was making a lot of noise and that he did not want the people upstairs to hear it so he "had to hush her up." We deem it unnecessary to decide whether this phrase was a comment on the evidence. If it was such a comment it called attention to the evidence most favorable to the defense of accidental killing. As indicated, we rule that the instruction was not prejudicially erroneous in the respect complained of.

■ The final assignment in the motion for new trial is that the court erred in not giving an instruction on the voluntariness of the statements (confessions) given by the defendant. Such an instruction is on a collateral issue and is not required as a part of the law of the case. State v. Higdon, 356 Mo. 1058, 204 S.W.2d 754. Since the defendant failed to submit an instruction on this issue he cannot complain of the failure of the court to give one. State v. Lee, supra.

We have examined the record and find no error in regard to matters not required to be preserved in the motion for new trial.

The indictment properly charged the defendant with the offense of murder in the second degree. The verdict is in proper form. Defendant was granted allocution and the sentence and judgment are responsive to the verdict.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.