**STATE of Missouri, Respondent,**

v.

**Edward Elza BUSSARD, Appellant.**

No. 9309.

Missouri Court of Appeals, Springfield District.

April 3, 1973.

Motion for Rehearing or to Transfer to Supreme Court Denied April 19, 1973.

Application to Transfer Denied June 11, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Bob J. Keeter, Springfield, for appellant.

BILLINGS, Judge.

In this jury waived case the Circuit Court of Greene County, Missouri, found appellant guilty of second degree burglary and stealing in connection therewith and sentenced him to two years imprisonment on each charge, and ordered the sentences to be served concurrently. We affirm.

On January 7, 1970, when Mr. and Mrs. Ron Raney returned to their home in late afternoon from work they discovered their house had been forcibly entered and the

following items taken: her wedding rings, her dinner ring, her wristwatch, three pair of cowboy boots, two class rings, two antique watches, two $2.00 bills, several silver dollars, and some old coins having a face value of $20.00 to $30.00.

The Raney home was located on the eastern edge of Springfield, Missouri, and one of the several routes to the residence from Springfield proper is by way of Division Street and turning south at Hopper's Grocery Store. The Raney house was painted white and when Mr. Raney started to unlock one of the entrance doors to the dwelling a muddy footprint was observed about doorknob high on the door. When he pushed against the door both the door and door facing "went in together". There were splinters and pieces of wood from the door and facing scattered on the floor, the rug was askew and the interior of the house showed visible signs of having been ransacked.

The trial consisted of Mrs. Raney's testimony, the circumstances surrounding the taking of and identification of a written statement of appellant by Deputy Sheriff McCafferty of Greene County, and the reception in evidence of appellant's written acknowledgement of Miranda warnings and a portion of the incriminating statement.

Appellant seeks reversal on the following grounds: (A) the charges should have been dismissed by the trial court because he was not tried within 180 days pursuant to his request under the Uniform Mandatory Disposition of the Detainer's Act (§§ 222.080–222.150 RSMo., 1969, as amended 1971); (B) his written confession was coerced and was the fruit of a violation of Missouri law since he was in custody more than 20 hours before a warrant was issued (Rule 21.14, V.A.M.R. and § 554.170, RS

Mo., 1969); (C) his request for counsel was not timely considered by the magistrate court; (D) the information was fatally defective because of vagueness and indefiniteness as to the place where the offense occurred and as to the property stolen; (E) the portion of his written confession received by the trial court referred to other and separate crimes; (F) the portion of his written confession received in evidence was collateral to the offenses with which he was charged since it did not describe with particularity the location of the burglarized residence or the date of the burglary.

Prior to trial two separate hearings were held concerning the matters in (A), (B), and (C). In addition, an oral motion to dismiss because of the 20-hour rule and a written motion to quash the information were denied by the court.

█ In July of 1971 appellant was a prisoner in the Department of Corrections [under a sentence from Christian County for burglary and stealing] and a detainer for this Greene County offense had been lodged against him. He prepared pro se a request under the Detainer's Act. He admitted at the hearing and admits in his brief herein that he failed to comply with § 222.090(2) in that he did not send one copy of his request and the required certificate to the court and one copy to the prosecuting attorney.[1]

Appellant's abortive request for a disposition of the charges was made in July, 1971. Between that time and November 16, 1971, appellant's Christian County sentence was vacated. He posted bond in the Greene County Magistrate Court on November 12, 1971, and appeared in the magistrate court for a preliminary hearing on the instant charges on December 14, 1971. At this time he requested a continuance

---

1. Appellant testified he put all the documents in a single envelope addressed to the Greene County Circuit Clerk. In the certificate of mailing shown on the documents appellant certified they were mailed to the prosecuting attorney of Randolph County [appellant was incarcerated at the Missouri Training Center for Men at Moberly, Missouri]. A return receipt of certified mail was signed by the Greene County prosecuting attorney's office.

in order to employ counsel of his own choosing. The hearing was re-set for January 12, 1972. On this last-mentioned date Attorney Fletcher appeared in the Magistrate Court on behalf of appellant and requested another continuance. The court continued the preliminary hearing to February 17, 1972. Three days before the scheduled hearing, on February 14, Attorney Fletcher was permitted to withdraw as appellant's attorney and upon a finding of indigency of appellant new counsel was appointed for him and the hearing was held on February 18, 1972.

Appellant was arraigned in circuit court on February 25, 1972, and entered not guilty pleas to the charges. On March 7, 1972, his motion to suppress his confession was filed. A hearing was conducted on this motion on March 23, 1972, and the motion was overruled [as was an oral motion that day to dismiss the information because of appellant being held in custody for more than 20 hours before a warrant was issued]. On the same date appellant filed his motion to dismiss the charges because of the state's failure to try him within 180 days pursuant to the Detainer's Act. A hearing was held on March 28, 1972, on this motion and it was overruled. Appellant thereupon filed his motion to quash the information and it was overruled and his trial followed on March 28th.

Appellant suggests we should consider his request for trial under the Detainer's Act as valid [contrary to the statutes] and, in addition, tack on the period from when he first appeared in magistrate court until the date of his trial and hold the trial court was without jurisdiction to try him. To do so would ignore the provisions of the Detainer's Act and fly in the face of reason. Having failed to follow the statutory requirements, appellant cannot shift the blame for his own dereliction to others. There is a complete lack of evidence that from November 16, 1971, appellant at any time advised any court of his ineffective request under the Detainer's Act or of his desire for a speedy trial. In such circumstances the appellant is in no position to fault the state.[2]

■ Akin to the foregoing is appellant's complaint that his request for counsel was not timely considered. The request for trial under the Detainer's Act never reached any court and the record shows appellant desired to employ his own attorney when he first appeared for a preliminary hearing. Appellant, in his brief, contends he should have had counsel before he gave officers his written confession, when he filed his request under the Detainer's Act, and when he made bond in magistrate court. Our answer is that [as we will shortly demonstrate] appellant waived his right to counsel before he was interrogated by the officers, no court had any knowledge of his desire for counsel when he failed to comply with the Detainer's Act, and, he made no request for and on the contrary sought to employ his own counsel when he appeared in magistrate court. We hold there was no obligation, constitutional or otherwise, to provide appellant with an attorney prior to the determination of his indigency.

■ In points (B), (E), and (F), above, appellant attacks the giving and use of his confession. At the hearing on his motion to suppress the use of the written confession the circumstances of appellant giving the incriminating statement were fully explored.

In January of 1970 appellant was in the United States Army and stationed at Fort Leonard Wood, Missouri. A series of burglaries took place in Greene County [and Christian County] that month and officers had found appellant's wife and his brother's wife in possession of stolen articles and had obtained a statement from one of appellant's alleged accomplices implicating

2. State v. Harper, 473 S.W.2d 419 (Mo. banc 1972) on waiver of a defendant of his right to a speedy trial; Also, State v. Harmon, 243 S.W.2d 326 (Mo.1951).

appellant. On February 9, 1970, Greene County officers notified army authorities they desired to question appellant concerning the burglaries and he was placed in the army stockade on that date.

Appellant testified that an "M.P." told him he was being taken to the stockade because "The authorities are supposed to have a hold on you . . . ." He was not told what he was charged with and was taken to the "box" which he described as " . . . it is actually a punishment area . . . about six feet long and four feet wide. They've got just a bed in it, but it ain't got a mattress, just spring bed." One cover was furnished for the bed and toilet facilities were available outside of the "jail cell". Appellant said he was in the "box" for two or three days before he learned why he was there; that he was there for a week; that it was some three days after he was placed there before he saw officers from Greene County [one of the officers testified appellant was visited by him and another officer the morning of February 10, 1970; appellant's written acknowledgement of Miranda warnings and his written confession show they were made at 10:30 o'clock a. m., February 10, 1970].

Appellant was taken from the "box" to a visitor's room where Deputy McCafferty and Detective Boatman were waiting. Then the following occurred:

"Q. Then tell us what happened?

A. We went into the room and the MP stayed outside in the hallway.

Q. Then McCafferty and Boatman advised you of your rights, did they?

A. Yes, sir.

Q. And then you agreed to talk to them, did you?

A. Well, after he read me my rights, he started tellin' me about my sister and Mike had already signed a statement and it would just be better if I cooperated. They told me

that and then asked me if I'd go ahead and talk to 'em.

Q. And you knew at the time you were entitled to counsel at that interrogation?

A. Yes, I guess.

Q. You knew that?

A. (No response)

Q. And you knew that you didn't have to talk to them, didn't you?

A. Yes, sir.

Q. And you also knew that anything that you said at that time could and probably would be used against you, didn't you?

A. I guess so, sir.

Q. And you knew, didn't you that there was nobody threatened to hit you or mistreat you in anyway, did they?

A. No, sir.

Q. If you didn't talk to them?

A. No sir.

Q. What was the next thing after you —what did you say to them to tell them that you would talk to them?

A. What do you mean?

Q. Well, what did they say to you to ask if you would talk to them?

A. Well, after they told me they had my sister and my brother's wife and told me that they had statements against Mike, he said, 'Now, do you want to go ahead and cooperate with us, Eddie or not?'

Q. And to that what did you reply?

A. I said yes.

Q. And that was knowing that you were entitled to counsel and didn't have to make a statement?

A. Yes, sir.

Q. Did you know that or not?

A. I mean I was told that, yes.

Q. Did you understand what they said to you?

A. Well, I guess it was true because I talked about it. That's the first time I'd ever been in any trouble, I mean they read me my rights and I guess explained it to me, yes.

Q. And did you agree to talk to them?

A. Yes, sir."

Appellant also testified that he "understood" that if he would help clear up the various burglaries he would probably only get charged on one of them. Deputy McCafferty testified that "This was probably true in Greene County, but I said the other counties we couldn't speak for." [3]

The officer said that in addition to reading appellant the warning under Miranda from a card, appellant also executed the written Miranda "waiver" received in evidence.

There is not one scintilla of evidence in the record before us of any type of mental or physical coercion of appellant in his giving the officers his statement. Appellant's court-appointed counsel in this appeal labors long and hard to find coercion via the military discipline appellant was exposed to [he was on "K.P." at the time he was removed to the army stockade], the failure of the army authorities to advise him why he was being placed in the stockade, the "box" he was placed in [subsequently described by appellant as "The reason they call it a box, is built—each cell is separated from the other. They've got cement cells downstairs and upstairs it's wood on three sides with bars on the front,

that's why it's called the box."—appellant was in the upstairs cell], and his being held beyond 20 hours before a warrant was issued.

We find, as did the trial court, that appellant's statement was free and voluntary in a constitutional sense, giving due regard to the "totality of circumstances" rule. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962). Assuming, without deciding, appellant was held in custody in violation of Rule 21.14 and § 544.170 this does not as a matter of law invalidate his confession. State v. Pughe, 403 S.W.2d 635 (Mo. 1968).[4]

■ Turning now to appellant's contention that the trial court erroneously received in evidence a part of his statement that referred to other crimes, point "E", supra, we find this assertion not supported by the record. Following the motion to suppress and prior to the trial, the court, anticipating a jury trial, had directed the prosecuting attorney to extract from the complete statement only that portion pertaining to the offense defendant was being charged with and which was intended to be read to the jury. At the trial, the following colloquy ensued:

"MR. STRECKER: Your Honor, the Court has directed me to prepare a portion of the statement which I intended to read to the jury. I did that and delivered a copy to the Court, the defendant's attorney and kept one for myself and in that portion of the statement I underlined certain words which I would be willing to omit from the statement because it showed evidence of other crimes.

3. Appellant was released by army authorities to Christian County authorities and upon his guilty pleas there to burglary and stealing was sentenced to three years on each charge, the sentences to be served consecutively.

4. The record is incomplete as to when a warrant was issued by Greene County or Christian County authorities. Appellant said he was served with a warrant when Greene County officials "came down and picked us up" two days after he had given his statement to the Greene County officers.

I would like for the Court to receive State's Exhibit number 2 with the underlined portions or the words omitted, and not considering those underlined portions.

THE COURT: I would ask defendant's counsel, of course the State is entitled to if the Court's ruling is correct the State is entitled to show portions of this statement. Now, the typewritten portion that you have, would it be satisfactory with defense counsel—of course you are not waiving your objection to all of this—

MR. ANDERSON: Yes.

THE COURT:—but so far as form and to avoid this question raised about the other burglaries, and things, would it be satisfactory to you to use typewritten portion that has been prepared and the Court ignore the words that are underlined?

MR. ANDERSON: Yes, Your Honor, except of course, that I want the record to still show my objection to—I think Exhibit 2 is the whole statement."

The foregoing demonstrates that all references to other crimes were specifically excluded by the trial court, including the words "other" and "more" which referred to burglaries other than the instant one.[5] Additionally, we note appellant's acquiescence to the procedure followed by the trial court and lack of any objection on the ground now asserted. We find no error in admitting the portion of appellant's incriminating statement.

■ Appellant's final assault on his confession, (F) supra, is that since that portion of his statement received does not include the date of the burglary or describe with particularity the burglarized house, it was collateral to the offenses being tried. We disagree.

Appellant's point is broader than his trial objection which was there was nothing in the statement that tended to prove the burglary Mrs. Raney had described. However, we will consider the same. The information charged appellant with committing the offense on January 7, 1970, in Greene County. Mrs. Raney's testimony shows that someone forcibly broke into her and her husband's home on January 7, 1970, and removed certain property therefrom without her or her husband's consent. Her testimony clearly establishes that the crime of burglary and stealing was committed. This in itself is independent proof of the corpus delicti. State v. Hardy, 365 Mo. 107, 276 S.W.2d 90 (banc 1955).

Here, appellant's confession stated he and others broke into a white house near Division Street ["We turned south by a little grocery store"] and took the items described by Mrs. Raney. We hold appellant's statement to be corroborated by independent proof of the corpus delicti and contains sufficient probative evidence of the crime charged.

5. The portion of appellant's statement received, with the underlined words omitted, is as follows:

"Q State your full name, age and address.
A Edward Elda Bussard 19 Ft. Wood Stockade.
Q Have you been involved in any *other* burglary?
A Yes, I've thought of one *more*. Mike, Everett, and I broke into a residence off of Division, we turned south by a little grocery store. A white house and we got into it by entering the front door after Mike kicked it in. Door was on the end of the house I don't know if it was the front or not. We got three pair of cowboy boots, some old watches, some jewelry, some old silver dollars, and a couple of $2.00 bills. About $20.00 total. I got $10.00 in silver dollars and was let out in town. Mike got the $2.00 bills. I don't know what happened to the rest of the things.
Q This statement was given freely and no threats or promises were made. Is this true?
A Yes.
Q You were advised of your rights and signed a waiver in our presence.
A Yes".

The remaining point (D) is that the information is so vague and indefinite that it does not charge a crime and therefore appellant's conviction cannot stand. His complaint is directed to the failure of the information to sufficiently particularize the place where the alleged offense occurred and the property he is charged with stealing.

The general rule in this state is that an indictment or information should state facts which constitute an offense with reasonable certainty so that the accused knows what he has to answer. State v. Reynolds, 274 S.W.2d 514 (Mo.App.1955). But if the substantive elements of the crime are set forth in the indictment and the accused is plainly charged, the reasonable requirements of the common law are satisfied. State v. Stringer, 357 Mo. 978, 211 S.W.2d 925 (1948).

The essential elements of burglary in the second degree are breaking and entering a dwelling house by a person with the intent to commit a felony or steal therein. The address of the dwelling house is not an essential element of the crime as long as the dwelling house is sufficiently identified. In State v. Sallee, 436 S.W.2d 246 (Mo.1969), the court answered a similar contention thusly (l. c. 251): "The information in this case set out that the dwelling house was the property of Mr. and Mrs. Robert D. Jennings and contained all the elements of the offense of burglary in the second degree. The failure to allege the address does not make this information legally insufficient. It was sufficiently definite to enable the defendant in this case to prepare his defense. With the dwelling house being described as the property of Mr. and Mrs. Robert D. Jennings, and the date of the offense being set out the information is of sufficient definiteness to be set up as a bar to subsequent prosecution for the same offense."

The information sets forth the substantive elements of the crime of burglary in the second degree as defined by § 560.-045, RSMo 1969, and § 560.110, RSMo 1969.

And the information in this case states that the appellant feloniously and burglariously broke into the house of Mr. and Mrs. Raney to steal "one set of wedding rings and other jewelry of some value" and property belonging to Mr. and Mrs. Raney; and did so steal. The information reasonably sets forth all of the essential elements of the crime and the appellant knew what he was accused of doing and taking. See State v. Biven, 151 S.W.2d 1114 (Mo.1941). If the appellant desired further particulars, he should have filed a motion for a bill of particulars. State v. Rose, 428 S.W.2d 737 (Mo.1968). We hold the information sufficient.

The judgment is affirmed.

TITUS, C. J., and STONE and HOGAN, JJ., concur.